René P. Tatro (SBN 078383)
Juliet A. Markowitz (SBN 164038)
TATRO TEKOSKY SADWICK LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA  90071
Telephone:    (213) 225-7171
Facsimile:    (213) 225-7151
E-mail:        rtatro@ttsmlaw.com
                jmarkowitz@ttsmlaw.com

Raymond N. Nimrod (*pro hac vice* pending)
Matthew D. Robson (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, NY  10010
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100
E-mail:        raynimrod@quinnemanuel.com
                matthewrobson@quinnemanuel.com

Attorneys for Plaintiff Pharmavite LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PHARMAVITE LLC, a California limited liability company,

                              Plaintiff,

        v.

BAUSCH & LOMB INCORPORATED, a New York corporation, and PF CONSUMER HEALTHCARE 1 LLC, a Delaware corporation;

                              Defendants.

Case No.  2:21-CV-09507

**PHARMAVITE LLC'S COMPLAINT FOR:**

**(1) MONOPOLIZATION (15 U.S.C. § 2);**
**(2) ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2);**
**(3) CONSPIRACY TO MONOPOLIZE (15 U.S.C. § 2); and**
**(4) DECLARATORY JUDGMENT—NON-INFRINGMENT, PATENT INVALIDITY, AND PATENT MISUSE (28 U.S.C. § 2201 *et seq.*)**

**JURY TRIAL DEMANDED**

Plaintiff Pharmavite LLC ("Pharmavite") hereby alleges as follows against defendants Bausch & Lomb Incorporated ("Bausch & Lomb") and PF Consumer Healthcare 1 LLC ("PF Consumer Healthcare 1") (collectively, "Defendants"):

## NATURE OF THE ACTION

1.     This case concerns Defendants' attempts to monopolize the eye health supplement market and to keep competing products, including Pharmavite's Nature Made® Vision supplement, off the market.  Defendants have done so by filing a sham patent infringement lawsuit against Pharmavite; making false and misleading claims about Bausch & Lomb's PreserVision® products, including making unlawful disease claims; and/or misusing and misrepresenting the scope of Defendants' United States Patent No. 8,603,522 ("the '522 Patent").

2.     Pharmavite brings this action asserting claims for monopolization, attempted monopolization, and conspiracy to monopolize in violation of 15 U.S.C. § 2.

3.     Pharmavite also brings this action for a declaratory judgment that (a) it does not infringe, either directly or indirectly, any claim of the '522 Patent; (b) the claims of the '522 Patent are invalid for failure to comply with the requirements for patentability set forth in Title 35 of the United States Code and related judicial doctrines, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112 and/or obviousness-type double patenting; and (c) the claims of the '522 Patent are unenforceable due to at least patent misuse.  This action is necessary to resolve an actual, justiciable, and continuing controversy between Pharmavite and Defendants regarding the non-infringement, invalidity, and unenforceability of the '522 Patent.

## THE PARTIES

4.     Plaintiff Pharmavite LLC is a California limited liability company with its principal place of business in West Hills, California.

5.     On information and belief, defendant Bausch & Lomb is a corporation organized and existing under the laws of New York, with a principal place of business at 1400 North Goodman Street, Rochester, NY 14609.  On information and belief,

PHARMAVITE LLC'S COMPLAINT

Bausch & Lomb conducts business within the State of California and has a registered agent in California.

6.      On information and belief, defendant PF Consumer Healthcare 1 is a limited liability company organized and existing under the laws of Delaware and having a place of business at 1209 Orange Street, Corporation Trust Center, Wilmington, DE, 19801.  On information and belief, PF Consumer Healthcare 1 conducts business within the State of California and has a registered agent in California.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201-2202, 1331-1332, 1338(a), and 1367(a), and the doctrine of pendent jurisdiction.

8.      Pharmavite's claims arose in this District, and Pharmavite or its agents may be found or transact affairs in this District.  In addition, on information and belief, Bausch & Lomb has conducted business in this District by marketing, selling, advertising, and promoting its product called PreserVision®, and Defendants have conducted business in this District by misusing the '522 Patent and expired United States Patent No. 6,660,297 ("the '297 Patent"), thereby causing, or likely to cause, harm to Pharmavite in this District.  Defendants have further filed a patent infringement lawsuit lacking any good faith basis in an unquestionably improper venue (the U.S. District Court for the District of Delaware) against Pharmavite, causing Pharmavite harm in this District.  On information and belief, Bausch & Lomb has attempted to and has willfully and unlawfully maintained a monopoly in the eye health supplement market throughout the United States, including in this District, and PF Consumer Healthcare 1 has conspired with Bausch & Lomb to do so, causing Pharmavite injury in this District and attempting to exclude Pharmavite' Nature Made® Vision supplement from the U.S. market, including in this District.  Accordingly, on information and belief, Defendants are subject to personal jurisdiction in California.

9.      Venue in this District is appropriate under 28 U.S.C. § 1391.

# FACTUAL BACKGROUND

## A.      The Parties' Dietary Supplements

10.      Pharmavite manufactures, largely in California, Nature Made® brand vitamins and dietary supplements.  Nature Made® vitamins and dietary supplements are "The #1 Pharmacist Recommended Vitamin and Mineral Supplement Brand." Among Pharmavite's dietary supplements is a product called Nature Made® Vision AREDS 2 ("Nature Made® Vision supplement"), which helps support an individual's healthy vision and eye function.

11.      Defendant Bausch & Lomb has a line of "eye vitamin and mineral supplements" called PreserVision®.  PreserVision® packaging states that the supplements contain the AREDS 2 Formula, as shown in Figures 1, 2, and 3 below (true and correct copies of the PreserVision® products taken from the PreserVision.com website, https://www.preservision.com/eyecare-professionals/the-areds-formula/, on December 8, 2021):

  

Figure 1                            Figure 2                            Figure 3

12.      The AREDS 2 Formula is a combination of vitamins and minerals—*i.e.*, vitamin C, vitamin E, copper, zinc, lutein, and zeaxanthin—in specific amounts that the National Eye Institute ("NEI") of the United States Department of Health and Human

Services' National Institutes of Health ("NIH") studied in a clinical trial known as AREDS 2.

13.     Bausch & Lomb's PreserVision® AREDS 2 products directly compete with Pharmavite's Nature Made® Vision supplement.

**B.     Defendants' Patents**

14.     Defendants claim to be joint owners of the '522 Patent, entitled "Nutritional Supplement to Treat Macular Degeneration."  Attached as Exhibit A is the form and content of the '522 Patent.  Pharmavite does not concede the truth or admissibility of any statement made within the '522 Patent.

15.     The '522 Patent is a continuation of an abandoned patent application, which in turn is a continuation of the now-expired '297 Patent, which, on information and belief, also had been owned jointly by Defendants.  Attached as Exhibit B is the form and content of the '297 Patent.  Pharmavite does not concede the truth or admissibility of any statement made within the '297 Patent.

16.     The enforceable term of a United States patent begins on the date the patent issues and ends 20 years from the date on which the application for the patent was filed, absent certain exceptions.  The application for the '297 Patent was filed on March 23, 2001, and the patent issued on December 9, 2003.  Thus, the enforceable term of the '297 Patent ended March 23, 2021.

17.     The expired '297 Patent included "composition" claims, which Defendants have previously alleged cover the AREDS 2 formulation itself.  For patents claiming a composition, anyone using or selling the claimed composition in the United States during the patent's enforceable term can be held liable as an infringer.  The owner of a valid composition patent is therefore able to prevent the sale of the claimed composition in the United States, regardless of how the composition is to be used.

18.     Thus, during the enforceable term of the '297 Patent, Bausch & Lomb could assert the patent to exclude any competing AREDS 2 formulation from the market, to the extent the '297 Patent was valid and covered the AREDS 2 formula.

Defendant Bausch & Lomb did so via numerous lawsuits, which lawsuits, upon information and belief, allowed Bausch & Lomb to increase and maintain its large market share.

19.    But that enforceable term ended on March 23, 2021, when the '297 Patent expired.  Thus, after March 23, 2021, Bausch & Lomb could no longer validly claim that the AREDS 2 formula is still patented—but Bausch & Lomb nonetheless continued (and continues) to make that claim.  The post-March 23, 2021 PreserVision® claim of "Patented Formula" on the front or other panels of its packaging and on its website advertising is false.

20.    The patent application that issued as the '522 Patent was filed by Defendants over a year after the '297 Patent had issued, and claims priority to the same parent application as the '297 Patent.  The '522 Patent, however, is **not** a composition patent.  It does **not** claim any formula, much less the AREDS 2 formulation.  Rather, the '522 patent claims are narrow method claims reciting two key limitations relevant here.  *First*, all claims require administering the AREDS 2 composition to a specific subset of the population, namely persons with the disease of early age-related macular degeneration (the disease is referred to herein as "AMD" and the limitation is referred to herein as the "early AMD limitation").  *Second*, all claims require that such administration achieve a specific result, namely treating or stabilizing visual acuity loss in persons with early AMD (the "stabilization limitation").  Claim 8 of the '522 Patent is illustrative, and reproduced below with the stabilization and early AMD limitations, respectively, in bold underline:

> 8. A method of treating age-related macular degeneration consisting essentially of administering a daily dosage of not less than approximately 420 mg and not more than approximately 600 mg vitamin C, not less than approximately 400 IU and not more than approximately 540 IU vitamin E, approximately 0.04 mg to 40 mg lutein-zeaxanthine combination, not less than approximately 60 mg and not more than approximately 100 mg zinc and at least 1.6 mg and not more than approximately 2.4 mg copper, **wherein the daily dosage stabilizes**

**visual acuity loss** by reducing the risk of developing late stage or advanced age-related macular degeneration **in persons with early age-related macular degeneration.**

21.     The '522 Patent specification also makes numerous references to the method to treat the disease of early AMD.  Pursuant to the '522 Patent's specification, the purported invention "relates to a ... nutritional or dietary supplement ... that *decreases visual acuity loss … in persons with early age-related macular degeneration*."  Exhibit A, '522 Patent at col. 1, lines 17-26 (emphasis added).  *See also id.* at col. 2, lines 26-40 ("[t]he present invention ... strengthens and promotes retinal health ... *in people with particular ocular diseases.... Visual acuity loss is decreased* through the use of the present composition ... *in persons with early age-related macular degeneration*") (emphasis added); *id.* at col. 9, lines 12-16 (invention is intended to provide a "safe and effective method of *preventing, stabilizing, reversing and/ or treating macular degeneration* or visual acuity loss.... *in persons with early age-related macular degeneration*....") (emphasis added).

22.     The preambles of the '522 Patent claims are limiting because they breathe life into the claims.  Confirming this, the applicants stated to the USPTO Examiner during prosecution of the application that issued as the '522 Patent that they "ma[d]e certain" that each preamble "breathes life into the claim."

23.     Accordingly, the '522 Patent is *limited* to methods for administering the relevant composition to persons that already have the disease of early AMD, and for achieving the result of treating or stabilizing visual acuity loss.  The claims of the '522 Patent do not cover administering the AREDS 2 formula to persons suffering from no eye conditions at all, such as persons with healthy vision and eye function who want to support the health and function of their eyes by taking dietary supplements.  Nor do they cover administering the AREDS 2 formula to persons suffering from other ocular disorders or AMD that has advanced beyond the early stage.  The applicants for the '522 Patent expressly relied on the narrow nature of the pending claims as covering only a method of preventing or stabilizing visual acuity loss in the "very specific ocular

disease referred to in the art as early/intermediate stage age-related macular degeneration" in obtaining the '522 patent.  *See* '522 Patent prosecution history, January 14, 2010 Amendment and Response at 7 ("Applicants do not claim a method of preventing or stabilizing visual acuity loss from a plurality of ocular disease states, but rather, from a very specific ocular disease referred to in the art as early/intermediate-stage age-related macular degeneration.").

## C.    Defendants' Improper Attempts to Monopolize the Eye Health Dietary Supplement Market

24.    Bausch & Lomb significantly dominates and maintains monopoly power in the eye health dietary supplement market.  For the past several years, on information and belief, Bausch & Lomb's share of the eye health dietary supplement market has increased steadily, from 68% in 2016 to 79% to 2019.  Currently, year-to-date in 2021, on information and belief, Bausch & Lomb has an 80% share of the eye health dietary supplement market.

25.    Bausch & Lomb has monopolized, attempted to monopolize, and/or attempted to maintain a monopoly over the market using several unlawful, unfair, and fraudulent methods, including but not limited to, the following—each of which is described in more detail in the sections which follow below:

      i.    Bausch & Lomb, together with co-defendant PF Consumer Healthcare 1, has filed and is proceeding with a sham lawsuit against Pharmavite in which Defendants falsely claim that Pharmavite's Nature Made® Vision supplement infringes Defendants' '522 Patent, which is limited to methods of treating or stabilizing visual acuity loss in a specific subset of the population, namely persons with early AMD.  Pharmavite does not infringe the '522 Patent because, among other reasons, Pharmavite does not advertise or sell its Nature Made® Vision supplement to treat any disease, much less early AMD.  Nor have Defendants even alleged that Pharmavite directs persons with early

AMD to take the Nature Made® Vision supplement, which would be necessary for any infringement claim.  Defendants have filed similar sham lawsuits against other competitors also selling what they market as AREDS 2 supplements.

ii.   On information and belief, without approval of the U.S. Food and Drug Administration ("FDA"), Bausch & Lomb makes improper disease claims on its website and product packaging, misleading consumers into believing the PreserVision® product will treat a disease, including to the extent that Bausch & Lomb is referring to the '522 method-of-use patent in labeling and advertising its PreserVision® dietary supplement as "patented."

iii.   Even after the '297 Patent expired on March 23, 2021, Bausch & Lomb falsely labeled the PreserVision® product and falsely represented to consumers, including on its website, that its PreserVision® products are patent protected and contain a "patented" formula.

iv.   To the extent Bausch & Lomb was referring to the '522 patent with its post-March 23, 2021 patent claims, such claims are false because the '522 patent cannot cover the AREDS 2 formula as a matter of law because it is a method-of-use patent, and Bausch & Lomb cannot lawfully practice or direct other persons to practice the claimed methods of use, all of which require the treatment of a disease, without the required approvals from the FDA (which on information and belief Bausch & Lomb does not have).

v.   On information and belief, with its false claim that its PreserVision® products contain a "patented formula," Bausch & Lomb misleads consumers into believing the PreserVision® AREDS 2 formulation is unique and superior to competing products and that no other company

may properly sell an AREDS 2 formula, thereby willfully maintaining, or attempting to establish monopoly power.

### i.   Defendants' Sham Patent Infringement Lawsuit

26.     On July 15, 2021, Defendants filed a lawsuit against Pharmavite and a related entity, Nature Made Nutritional Products ("Nature Made"), in the United States District Court for the District of Delaware, captioned *Bausch and Lomb Incorporated and PF Consumer Healthcare 1 LLC v. Nature Made Nutritional Products and Pharmavite LLC*, Case No. 21-cv-01030-LPS (the "Patent Infringement Lawsuit"), in which Defendants alleged that Pharmavite and Nature Made infringe the '522 Patent by making and selling the Nature Made® Vision supplement.  Venue for this lawsuit, however, was plainly improper in Delaware under 35 U.S.C. § 1400 because Pharmavite and Nature Made neither reside in nor have regular and established places of business in Delaware.  They are instead both organized under the laws of the State of California, with their principal places of business in California, and with no place of business in Delaware.

27.     Rather than re-filing in a proper forum, Defendants doubled down on their improper choice of venue by filing an amended complaint ("the Delaware Amended Complaint"), naming as additional defendants entities related to Pharmavite and alleging that they had Delaware connections.  But the additional defendants named for their alleged Delaware connections are separate legal entities from Pharmavite and have no connection to the accused product—these entities *do not* make, use, sell, offer for sale, or import the accused product, *i.e.*, the Nature Made® Vision supplement, in the United States.  The Delaware Amended Complaint is a transparent and improper attempt to manufacture venue.

28.     Even aside from the improper venue, the Patent Infringement Lawsuit is without merit and constitutes sham litigation.  As discussed above, the '522 Patent claims cover only specific uses of the recited formulations that must satisfy both the early AMD and the stabilization limitations.  But Pharmavite, Nature Made, and the other named defendants in the Delaware Amended Complaint (collectively, the

"Delaware Defendants") have not engaged in any conduct that would satisfy either limitation—and no reasonable litigant could believe that they have.

29.     *First*, with respect to the early AMD limitation, that limitation requires administering the recited composition to persons already suffering from the disease of early AMD.  But, the Delaware Defendants do not administer the accused product to anyone, much less specifically to persons with early AMD.  Confirming the lack of merit of the Patent Infringement Lawsuit, despite Defendants' inability to even allege that any of the Delaware Defendants administer the accused product to anyone, Defendants nevertheless allege direct infringement by the Delaware Defendants.  Actual administration of the accused product, however, is a prerequisite to direct infringement of the '522 method claims.  Accordingly, the Delaware Defendants do not and cannot directly infringe any claim of the '522 patent.

30.     *Second*, with respect to the stabilization limitation, that limitation requires that administration of the composition achieve a particular result—treating or stabilizing visual acuity loss.  Again confirming the lack of merit of the Patent Infringement Lawsuit, Defendants do not allege that anyone ever had his or her visual acuity loss treated or stabilized by the Nature Made® Vision supplement, much less that the Delaware Defendants use the accused product to treat or stabilize visual acuity loss. The Delaware Amended Complaint thus does not plead any act of direct infringement for this additional reason.

31.     Defendants' indirect infringement claims are equally meritless.  Because Defendants did not plead any act of direct infringement, the indirect infringement claims necessarily fail as a matter of law for want of an underlying act of direct infringement.

32.     Moreover, the indirect infringement claims lack merit for the additional reason that none of the Delaware Defendants instruct persons with early AMD to take the accused product, nor do they instruct others to administer it to persons with early AMD.  Instead, Pharmavite markets the accused product as "[a]n eye health supplement

that helps support healthy vision and eye function," as shown in Figure 4 below (a true and correct excerpt of the www.NatureMade.com website):



**Vision with AREDS 2 Formula**

★★★★★  4.8 (29)   Write a review

Set your sights on quality nutrients and vitamins for your eyes. †

Count

60

WHERE TO BUY     Buy from amazon.com

**Benefits**

- An eye health supplement that helps support healthy vision and eye function†
- Lutein and Zeaxanthin are carotenoids that help support your eye's natural blue light filter†
- Vitamin C, Vitamin E, Copper, and Zinc provide antioxidant support†
- Made in the USA with quality global ingredients
- #1 Pharmacist Recommended Vitamin and Supplement Brand*

Disclaimer:
*Based on a survey of pharmacists who recommend branded vitamins and supplements.
1. Blumberg, J. B., et al. "Impact of Frequency of Multi-Vitamin/Multi-Mineral Supplement Intake on Nutritional Adequacy and Nutrient Deficiencies in U.S. Adults." Nutrients 9.8 (2017).
†These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

**Figure 4**

33.     Further, as shown in Figure 4 above, Pharmavite's Nature Made® Vision supplement states on its label that the supplement is to "help[] support health vision & eye function."  Tellingly, the Delaware Amended Complaint does not even allege that anyone with early AMD has ever even taken the Nature Made® Vision supplement. The Delaware Defendants therefore do not indirectly infringe in connection with the early AMD limitation.

34.     Nor do the Delaware Defendants indirectly infringe with respect to the stabilization limitation.  None of the Delaware Defendants instruct that persons should take the accused product to treat or stabilize visual acuity loss.  To the contrary, Pharmavite's Nature Made® Vision supplement unmistakably states on the front of its

label, in a vertical box on the right side, that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease," as shown below Figure 5, a true and correct picture of the front/right side of the Vision bottle. This statement is also made on the NatureMade.com website, as shown in Figure 4 above.



**Figure 5**

35.     Accordingly, at least for these reasons, Defendants' Patent Infringement Lawsuit is objectively baseless, and no reasonable litigant could realistically expect success on the merits.  Defendants' meritless lawsuit is an improper attempt to continue

to exclude competing AREDS 2 formulations from the market, when Defendants know they have no lawful basis to do so given their '297 Patent is now expired.

36.     Defendants' Patent Infringement Lawsuit is, on information and belief, brought with the intent to interfere directly with Pharmavite's business relationships with its customers and exclude Pharmavite's Nature Made® Vision supplement from the market.  This is demonstrated not only by the fact that Defendants cannot realistically expect success on the merits, but also by the fact that Defendants' Patent Infringement Lawsuit is one of at least a dozen lawsuits that Defendants have filed as part of their ongoing monopolization, and efforts to monopolize the eye health dietary supplement market and harm competitors' business relationships with customers.  That is, Defendants—which are large, multi-national entities with substantial resources—previously filed at least 11 other patent infringement actions against other, smaller competitors selling similar eye supplements.

37.     Defendants' improper intent is further demonstrated by its intentionally filing the Patent Infringement Lawsuit in an improper venue (Delaware), three thousand miles from where Pharmavite and Nature Made (the only Delaware Defendants with any connection to the Nature Made® Vision supplement) reside and have their principal places of business—a venue where Pharmavite and Nature Made do not have any physical presence or employees who reside there.  Rather than re-file in a proper venue or otherwise correct the venue issue, as discussed above, Defendants filed an amended complaint naming as defendants entities unconnected with the accused product in an improper attempt to manufacture venue.

**ii.     Bausch & Lomb's Improper Disease Claims**

38.     Drugs and dietary supplements are subject to the federal Food, Drug, and Cosmetic Act ("FDCA") and the FDA's governing regulations.  The FDA regulates several categories of statements that can be made on dietary supplement labels, including "disease claims" and "structure/function claims."

39.     A disease claim is a statement that either "explicitly or implicitly" claims "to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases."  21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(g)(2).  "Disease" means "damage to an organ, part, structure, or system of the body such that it does not function properly (*e.g.*, cardiovascular disease), or a state of health leading to such dysfunction (*e.g.*, hypertension)…."  21 C.F.R. § 101.93(g)(1).  Supplement manufacturers may not include disease claims on product labels without FDA approval.  21 U.S.C. § 343(r)(6)(C).  On information and belief, Bausch & Lomb does not have FDA approval to make disease claims in connection with its PreserVision® products.

40.     The FDA has set out multiple criteria for determining if a statement qualifies as a disease claim.  *See*, *e.g.*, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/small-entity-compliance-guide-structurefunction-claims.  For example, "[a] statement is a disease claim *if it mentions a specific disease or class of diseases*."  Moreover, citation of a publication or study on a product label may qualify as a disease claim if the context of the labeling, as a whole, suggests as much.  Specifically, "*[i]f the citation implies treatment or prevention of a disease, it is a disease claim.*  Thus, if in the context of the labeling as a whole its presence implies treatment or prevention of disease (for example, by placement on the immediate product label or packaging, inappropriate prominence, or lack of relationship to the product's express claims), the citation is a disease claim."

41.     In contrast, a structure/function claim is a statement that, among other things, "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans."  21 U.S.C. § 343(r)(6)(A); 21 C.F.R. § 101.93(f).  A manufacturer may include a structure/function statement on a supplement label without prior FDA approval if and only if: (1) the statement does not qualify as a disease claim, (2) the manufacturer "has substantiation that such statement is truthful and not misleading," and (3) the manufacturer includes a disclaimer that "[t]his statement has not been evaluated by the Food and Drug Administration. This product is not intended

to diagnose, treat, cure, or prevent any disease." 21 U.S.C. § 343(r)(6)(C). Merely including such a disclaimer on the label does not itself render the statement a structure/function claim rather than a disease claim. If the statement qualifies as disease claim then "the product will be subject to regulation as a drug," notwithstanding inclusion of the disclaimer.

42.     On information and belief, the FDA has not approved PreserVision® as a drug or approved any disease claims in connection with the PreserVision® products. Bausch & Lomb nonetheless is making unlawful disease claims in violation of the FDCA and its governing regulations. Bausch & Lomb makes explicit reference to the disease of age-related macular degeneration on its website, asserting as follows: "Only the patented PreserVision® formula contains the exact level of nutrients recommended by the NEI to help *reduce the risk of moderate to advanced AMD progression*," (emphasis added), as shown in Figure 6 below (a true and correct image taken from Bausch & Lomb's PreserVision® website at https://www.preservision.com/eyecare-professionals/the-areds-formula/ on or about December 8, 2021).



**Figure 6**

43.     Similarly, as shown in Figures 7 and 8 below (true and correct images taken from Bausch & Lomb's PreserVision® website at https://www.preservision.com/Why-PreserVision/Ingredients-Matter/ on or about December 8, 2021), Bausch & Lomb informs consumers, under the "Ingredients Matter" section of the "Why PreserVision" tab on its website, that "PreserVision AREDS 2 contains high levels of a specific combination of vitamins and minerals recommended by the NEI *to help reduce the risk of progression of moderate-to-advanced AMD*" (emphasis added), and that "National Eye Institute researchers tested and refined the AREDS formula over a period of 20 years.  The NEI recommends formula based on the AREDS2 study *to help reduce the risk of progression in people with moderate-to-advanced macular degeneration*."  (Emphasis added).



PreserVision AREDS 2 contains high levels of a specific combination of vitamins and minerals recommended by the NEI to help reduce the risk of progression of moderate-to-advanced AMD.



**Backed By Science**

National Eye Institute researchers tested and refined the AREDS formula over a period of 20 years. The NEI recommends formula based on the AREDS2 study to help reduce the risk of progression in people with moderate-to-advanced macular degeneration.

**Figure 7**                                          **Figure 8**

44.     Also, as shown in Figure 9 below (a true and correct image taken from Bausch & Lomb's PreserVision® website at https://www.preservision.com/Why-PreserVision/The-AREDS-Story/ on or about December 8, 2021), Bausch & Lomb informs consumers, under the "AREDS Story" section of the "Why PreserVision" tab on its website, that "[t]he NEI recommends the AREDS 2 formula for *helping to reduce the risk of progression in moderate to advanced* AMD."  (Emphasis added).  *See also* Figure 10, below ("Contains the exact levels of six key nutrients recommended by the National

1  Eye Institute *to help reduce the risk of progression in patients with moderate to advanced AMD.*")

2  (Emphasis added).



**Figure 9**

45.    Bausch & Lomb further includes and/or included disease claims on its PreserVision® labels. For example, Bausch & Lomb prominently cites and/or cited the AREDS 2 "clinical study" on its label with the claim that its formulation is "*clinically proven*"—which references are to *disease* studies of AMD.  (*See, e.g.,* Figure 1, above). The citation in this context is thus a disease claim.

46.    Bausch & Lomb's disease claims intentionally mislead consumers into believing the PreserVision® product will treat a disease.  Upon information and belief, the FDA has not determined that the PreserVision® products are safe and effective for treating any disease.

47.    Moreover, to the extent Bausch & Lomb is referring to the '522 Patent in claiming that the AREDS 2 formula used in its PreserVision® products is patent-protected and that its products contain a "patented" formula (as discussed in the following Section, below), Bausch & Lomb is thereby also making unlawful disease claims.  As explained above, the '522 method-of-use patent is limited to methods for treating AMD and/or treating or stabilizing visual acuity loss in persons with early AMD.

48.    To the extent Bausch & Lomb's references to "patented" on its label refer to the '522 Patent, such claims constitute unlawful competition in furtherance of Bausch & Lomb's monopolization, attempted monopolization, and maintenance and attempted maintenance of its monopoly, in that Bausch & Lomb is using the patent to make "disease" claims without the required approval of the FDA.

### iii.    Bausch & Lomb's False Claims of Patent Protection

49.    Bausch & Lomb further seeks to illegally continue to monopolize, maintain its monopoly in, or attempt to monopolize the eye health supplement market by falsely claiming that the AREDS 2 formula used in its PreserVision® products is patent-protected and that its products contain a "patented" formula, when its composition patent expired in March 2021.  As shown in Figure 10, below (a true and correct image taken from Bausch & Lomb's PreserVision® website at https://www.preservision.com/eyecare-professionals/the-areds-formula/ on or about December 8, 2021), Bausch & Lomb falsely states that its PreserVision® AREDS 2 Formula MiniGels have a "Patented formula."



**Figure 10**

50.     In addition, Bausch & Lomb claims on its website that "This **patented formula** is not available as a store brand," *see* Figure 11, below, true and correct image taken from Bausch & Lomb's PreserVision® website, https://www.preservision.com/Products/Choose-Your-PreserVision/areds-2-formula-miniGels/, on or about December 8, 2021 (emphasis added), and also refers on its website to "the patented PreserVision® formula…." (*See* Figure 6, above).



**Figure 11**

51.     As depicted in the figures above, well after the '297 Patent expired, Bausch & Lomb included on the front of its PreserVision® AREDS 2 supplements the claim that they contain the "AREDS 2 *Patented* Formula" (emphasis added).  Similarly, at least the PreserVision® AREDS 2 minigels also included a claim that the product is "[b]ased on the ONLY *Patented* Clinically Proven Formula" (emphasis added).  (*See* Figure 1, above).  Well after the '297 Patent expired, Bausch & Lomb also continued to make the false claim on another side of the box of its PreserVision® AREDS 2 supplements, in yellow capital letters, as follows: "PATENTED. NOT AVAILABLE AS A STORE BRAND."  *See* Figure 12 below (a true and correct image of the side of the PreserVision® AREDS 2 supplement box which was taken from the PreserVision.com website, https://www.preservision.com/Products/Choose-Your-PreserVision/areds-2-formula-miniGels/, on or about December 8, 2021):

**Figure 12**

52.     As explained above, Defendants' '297 composition patent, which Defendants purport to cover the AREDS 2 formulation itself, expired on March 23, 2021.  Even if the '297 Patent were valid during its enforceable term, after March 23, 2021, any direct or indirect claim by Bausch & Lomb that the AREDS 2 formula remains patented is literally false.  Nor, after March 23, 2021, could Bausch & Lomb properly seek to prevent competing sales of the AREDS 2 formula in the United States for any use.  Accordingly, Bausch & Lomb's post-March 23, 2021 label claim that its product is "patented" is incorrect and falsely conveyed to consumers, in furtherance of Bausch & Lomb's monopolization, attempted monopolization, and maintenance and attempted maintenance of its monopoly of the eye health dietary supplement market, that the AREDS 2 Formula used in PreserVision® is unique to that product, is different from competing AREDS 2 Formula supplements, is superior to competing AREDS 2 Formula supplements, including Pharmavite's Nature Made® Vision supplement, and that, because of the '297 Patent, no other dietary supplement can use the AREDS 2 Formula.

53.     To the extent Bausch & Lomb's claims of patent coverage on its label or in its advertising refer to the '522 Patent, such claims would also be false at least because the '522 Patent cannot cover the AREDS 2 formula as a matter of law because it is a method-of-use patent.  Moreover, Bausch & Lomb cannot lawfully practice or direct other persons to practice the claimed methods of use, all of which require the treatment of a disease, without the required approvals from the FDA (which on information and belief, Bausch & Lomb does not have).  Bausch & Lomb's conduct (*i.e.*, its claims of patent coverage on its label or in its advertising) are in furtherance of Bausch & Lomb's monopolization, attempted monopolization, and maintenance and attempted maintenance of its monopoly of the eye health dietary supplement market.

**D.     Defendants' Conduct Injures, and is Likely to Injure, Pharmavite as Well as the Competition**

54.     On information and belief, since Bausch & Lomb's composition patent (the '297 patent) expired on March 23, 2021, Bausch & Lomb has sold more than five million bottles of PreserVision®, many bearing the statement, "patented formula."  Based on marketplace observations, these sales total approximately $140 million.

55.     Even after the '297 Patent expired, and with knowledge that it had expired, Bausch & Lomb persisted in making reference to PreserVision®'s "patented formula" through ubiquitous statements not only on bottles of the product sold but also on Bausch & Lomb's websites and websites for e-tailers such as Amazon, creating, on information and belief, consumer misperception and illegally anticompetitive barriers to entry for Pharmavite's Nature Made® Vision supplement, resulting in competitive injury to Pharmavite—all of which Bausch & Lomb did and continues to do in its monopolization and attempted monopolization of the relevant market.

56.     Consumer survey data confirms that Nature Made is "The #1 Pharmacist Recommended Brand of Vitamins and Supplements."  Pharmavite is experienced in bringing new products to markets where other established competitors already had a

presence (but were not creating artificial and illegal anticompetitive barriers to entry to either establish or perpetuate a monopoly).

57.     Pharmavite's brand reputation and record of successful product entries notwithstanding, on information and belief, the market performance of Pharmavite's Nature Made® Vision supplement is unfairly disadvantaged by Bausch & Lomb's efforts to create consumer misimpressions through its false statements regarding the patented status of the PreserVision® formula; *i.e.*, given a choice between eye health supplements from two name brands such as Nature Made® and Bausch & Lomb, a significant percentage of reasonable consumers could and would be expected to choose the one prominently stating on its label or in its advertising that it is a "patented formula," even if (unbeknownst to the consumer) that is false.  On information and belief, Bausch & Lomb intended to illegally maintain its monopoly (or attempt to enhance it) even after expiration of the patent via this tactic, because if it did not provide both a perceived and actual advantage, a rational marketer such as Bausch & Lomb would have dropped the claim when its patent expired.

58.     On information and belief, a claim—even if false—that a supplement product is made with a "patented" formula can be a barrier to entry (and is here a barrier to entry), either establishing or perpetuating a monopoly, insofar as it influences consumer buying decisions, resulting in lost sales by competitors who are not engaged in such improper conduct.  For example, consumer reviews of PreserVision® on e-tailer websites mention the "patent" or "patented formula" as a positive attribute of PreserVision®, often as compared to competitive products which do not make such a claim.

## FIRST CLAIM FOR RELIEF

(Monopolization in violation of 15 U.S.C. § 2)

Against Bausch & Lomb

59.     Pharmavite incorporates paragraphs 1 through 58, above, as though fully set forth herein.

60.   Bausch & Lomb significantly dominates and monopolizes the eye health supplement market.  Currently, year-to-date in 2021, on information and belief, Bausch & Lomb has an 80% share of the eye health dietary supplement market.  For the past several years, Bausch & Lomb's share of the eye health dietary supplement market has increased steadily, from 68% in 2016 to 79% to 2019.

61.   Bausch & Lomb has monopolized and maintained a monopoly in the market using several inappropriate methods, by, among other things:

a.   Bausch & Lomb, together with co-defendant PF Consumer Healthcare 1, has filed and is proceeding with a sham lawsuit (*i.e.,* the Patent Infringement Lawsuit) against Pharmavite in which Defendants falsely claim that Pharmavite is infringing Defendants' '522 Patent.  Pharmavite, however, cannot directly infringe because it does not administer the accused product to any person, much less to persons with early AMD as required by the early AMD limitation, nor does it treat or stabilize visual acuity loss with the accused product, as required by the stabilization limitation.  Pharmavite further does not indirectly infringe at least because it does not direct persons with early AMD to take the accused product, or direct others to treat or stabilize visual acuity loss with the accused product.  At the time Defendants filed the Patent Infringement Lawsuit against Pharmavite, Defendants knew or objectively should have known that Pharmavite's Nature Made® Vision supplement does not infringe the '522 Patent at least because Nature Made® Vision is not sold or marketed as a product intended to treat any disease—and in fact disclaims any such use.  As such, Defendants' Patent Infringement Lawsuit is objectively baseless, and Defendants filed their lawsuit against Pharmavite without a reasonable basis.  On information and belief, Defendants filed the Patent Infringement Lawsuit in bad faith and with the specific intent to chill competition and increase revenues for Bausch & Lomb, and to divert sales

from Pharmavite's Nature Made® Vision supplement to Bausch & Lomb's PreserVision® products. Defendants have filed similar sham lawsuits against other competitors also selling what they market as AREDS 2 supplements;

b. To disadvantage the Nature Made® Vision supplement and products that compete with PreserVision®, Bausch & Lomb has made improper and unlawful "disease claims" regarding PreserVision® without FDA approval, in violation of FDCA, 21 U.S.C. § 343(r)(6)(C) and the implementing regulations, as well as California Sherman Food, Drug & Cosmetic Law, Cal. Health & Safety Code § 110670, including the following claims:

i. "Only the patented PreserVision® formula contains the exact level of nutrients recommended by the NEI to help *reduce the risk of moderate to advanced AMD progression.*" (emphasis added);

ii. "PreserVision AREDS 2 contains high levels of a specific combination of vitamins and minerals recommended by the NEI *to help reduce the risk of progression of moderate-to-advanced AMD.*" (emphasis added);

iii. "National Eye Institute researchers tested and refined the AREDS formula over a period of 20 years. The NEI recommends formula based on the AREDS2 study *to help reduce the risk of progression in people with moderate-to-advanced macular degeneration.*" (emphasis added);

iv. "The NEI recommends the AREDS 2 formula for *helping to reduce the risk of progression in moderate to advanced* AMD." (emphasis added); and

v. "Contains the exact levels of six key nutrients recommended by the National Eye Institute *to help reduce the risk of progression in patients with moderate-to-advanced AMD.*" (emphasis added);

PHARMAVITE LLC'S COMPLAINT

c. Even after the '297 Patent expired on March 23, 2021, Bausch & Lomb falsely labeled the PreserVision® product and falsely represented to consumers, including on its website, that its PreserVision® products are patent-protected and contain a "patented" formula;

d. To the extent Bausch & Lomb was referring to the '522 patent with its post-March 23, 2021 patent claims, such claims are false because the '522 Patent cannot cover the AREDS 2 formula as a matter of law because it is a method-of-use patent, and Bausch & Lomb cannot lawfully practice or direct other persons to practice the claimed methods of use, all of which require the treatment of a disease, without the required approvals from the FDA (which on information and belief, Bausch & Lomb does not have); and

e. With its false claim that its PreserVision® products contain a "patented formula," Bausch & Lomb deceives consumers into believing the PreserVision® AREDS 2 formulation is unique and superior to competing products.

62.    At all relevant times, Bausch & Lomb possessed and currently exercises monopoly power in the eye health supplement market, as demonstrated by Bausch & Lomb's high market share, barriers to entry, Bausch & Lomb's actual exclusion of competition, and its ability to charge supracompetitive prices in the relevant markets.

63.    On information and belief, through the conduct described above, and other conduct likely to be revealed in discovery, Bausch & Lomb has willfully and unlawfully maintained and enhanced its monopoly power.  Bausch & Lomb's conduct as described herein constitutes exclusionary conduct within the meaning of Section 2 of the Sherman Act.

64.    On information and belief, Bausch & Lomb's conduct as described herein has suppressed, and will suppress, competition and produced anticompetitive effects in the relevant markets, including causing Pharmavite antitrust injury and damages in the

form of lost sales and lost market share proximately caused by Bausch & Lomb's unlawful and anticompetitive practices.

65.     Bausch & Lomb's conduct has no procompetitive benefit or justification. The anticompetitive effects of Bausch & Lomb's behavior outweigh any purported procompetitive justifications.

66.     As a result of Bausch & Lomb's conduct, and the harm to competition caused by that conduct, Pharmavite has suffered continuing injuries to its business in an amount to be proven at trial and automatically trebled, as provided by 15 U.S.C. § 15.

67.     Pharmavite is also entitled to recover from Bausch & Lomb the costs of suit, including reasonable attorneys' fees, as provided by 15 U.S.C. § 15.

## SECOND CLAIM FOR RELIEF

(Attempted Monopolization in violation of 15 U.S.C. § 2)

Against Bausch & Lomb

68.     Pharmavite incorporates paragraphs 1 through 67, above, as though fully set forth herein.

69.     Bausch & Lomb significantly dominates, and is attempting improperly to monopolize, and/or is attempting improperly to maintain a monopoly in, the eye health supplement market.  Currently, year-to-date in 2021, Bausch & Lomb has an 80% share of the eye health dietary supplement market.  For the past several years, Bausch & Lomb's share of the eye health dietary supplement market has increased steadily, from 68% in 2016 to 79% to 2019.  Bausch & Lomb's market share and market power, tactics, and wrongful conduct make its attempt to monopolize a genuine threat to competition and to Pharmavite, in light of Bausch & Lomb's likely success in leveraging these acts into a monopoly.  Put otherwise, using its illegal and improper conduct, Bausch & Lomb has positioned itself to bring its attempted monopolization to fruition through illegal means.  It will take intervention from the courts to prevent that outcome, which would be damaging to competition, to consumers, and to Pharmavite.

PHARMAVITE LLC'S COMPLAINT

70.     Bausch & Lomb has attempted to monopolize, and/or attempted to maintain a monopoly of, the market using several inappropriate methods, by, among other things:

    a.  Bausch & Lomb, together with co-defendant PF Consumer Healthcare 1, has filed and is proceeding with a sham lawsuit (*i.e.,* the Patent Infringement Lawsuit) against Pharmavite in which Defendants falsely claim that Pharmavite is infringing Defendants' '522 Patent.  Pharmavite, however, cannot directly infringe because it does not administer the accused product to any person, much less to persons with early AMD as required by the early AMD limitation, nor does it treat or stabilize visual acuity loss with the accused product, as required by the stabilization limitation.  Pharmavite further does not indirectly infringe at least because it does not direct persons with early AMD to take the accused product, or direct others to treat or stabilize visual acuity loss with the accused product.  At the time Defendants filed the Patent Infringement Lawsuit against Pharmavite, Defendants knew or objectively should have known that Pharmavite's Nature Made® Vision supplement does not infringe the '522 Patent at least because the Nature Made® Vision supplement is not sold or marketed as a product intended to treat any disease—and in fact disclaims any such use.  As such, Defendants' Patent Infringement Lawsuit is objectively baseless, and Defendants filed their lawsuit without a reasonable basis.  On information and belief, Defendants filed the Patent Infringement Lawsuit in bad faith and with the specific intent to chill competition and increase revenues for Bausch & Lomb, and to divert sales from Pharmavite's Nature Made® Vision supplement to Bausch & Lomb's PreserVision® products.  Defendants have filed similar sham lawsuits against other competitors also selling what they market as AREDS 2 supplements;

b. To disadvantage the Nature Made® Vision supplement and products that compete with PreserVision®, Bausch & Lomb has made improper, unlawful, false and/or misleading "disease claims" regarding PreserVision® without FDA approval, in violation of FDCA, 21 U.S.C. § 343(r)(6)(C) and the implementing regulations, as well as California Sherman Food, Drug & Cosmetic Law, Cal. Health & Safety Code § 110670, including:

    i. "Only the patented PreserVision® formula contains the exact level of nutrients recommended by the NEI to help *reduce the risk of moderate to advanced AMD progression.*" (emphasis added);

    ii. "PreserVision AREDS 2 contains high levels of a specific combination of vitamins and minerals recommended by the NEI *to help reduce the risk of progression of moderate-to-advanced AMD.*" (emphasis added);

    iii. "National Eye Institute researchers tested and refined the AREDS formula over a period of 20 years. The NEI recommends formula based on the AREDS2 study *to help reduce the risk of progression in people with moderate-to-advanced macular degeneration.*" (emphasis added);

    iv. "The NEI recommends the AREDS 2 formula for *helping to reduce the risk of progression in moderate to advanced* AMD." (emphasis added); and

    v. "Contains the exact levels of six key nutrients recommended by the National Eye Institute *to help reduce the risk of progression in patients with moderate-to-advanced AMD.*" (emphasis added); and

c. Even after the '297 Patent expired on March 23, 2021, Bausch & Lomb falsely labeled the PreserVision® product and falsely represented to consumers, including on its website, that its PreserVision® products are patent-protected and contain a "patented" formula;

     d.   To the extent Bausch & Lomb was referring to the '522 patent with its post-March 23, 2021 patent claims, such claims are false because the '522 Patent cannot cover the AREDS 2 formula as a matter of law because it is a method-of-use patent, and Bausch & Lomb cannot lawfully practice or direct other persons to practice the claimed methods of use, all of which require the treatment of a disease, without the required approvals from the FDA (which on information and belief, Bausch & Lomb does not have);

     e.   With its false claim that its PreserVision® products contain a "patented formula," Bausch & Lomb deceives consumers into believing the PreserVision® AREDS 2 formulation is unique and superior to competing products.

71.    Bausch & Lomb's attempted monopolization through illegal means is a real and imminent threat to competition, and causes injury to Pharmavite specifically. Further, if Bausch & Lomb's attempted monopolization through illegal means is not stopped through judicial intervention, it has a dangerous probability of success as a result of Bausch & Lomb's existing high market share coupled with its aggressive use of illegal tactics designed to create barriers to entry (*e.g.*, falsely advertising PreserVision® as alleged herein and filing *seriatim* sham lawsuits against competitors, on information and belief, to compel competitors to leave the market, or force them to compete on an uneven playing field).

72.    On information and belief, Bausch &Lomb has been implementing the anticompetitive conduct set forth above, and other conduct likely to be revealed in discovery, with the specific intent to monopolize the relevant market. Bausch & Lomb's conduct as described herein constitutes illegal exclusionary conduct, within the meaning of Section 2 of the Sherman Act.

73.    On information and belief, there is a dangerous probability that Bausch & Lomb will succeed in unlawfully extending its monopoly in the relevant markets through its anticompetitive conduct as described herein.

74.     On information and belief, Bausch & Lomb's conduct as described herein is intended to suppress, has suppressed, and will suppress, competition and has produced, and will produce, anticompetitive effects in the relevant markets, including Pharmavite's antitrust injury and damages.

75.     Bausch & Lomb's conduct has no procompetitive benefit or justification. The anticompetitive effects of Bausch & Lomb's behavior outweigh any purported procompetitive justifications.

76.     As a result of Bausch & Lomb's conduct, and the harm to competition caused by that conduct, Pharmavite has suffered substantial and continuing injuries to its business in an amount to be proven at trial and automatically trebled, as provided by 15 U.S.C. § 15.

77.     Pharmavite is also entitled to recover from Bausch & Lomb the costs of suit, including reasonable attorneys' fees, as provided by 15 U.S.C. § 15.

### THIRD CLAIM FOR RELIEF

(Conspiracy to Monopolize/Attempt to Monopolize in violation of 15 U.S.C. § 2)

Against All Defendants

78.     Pharmavite incorporates paragraphs 1 through 77, above, as though fully set forth herein.

79.     Bausch & Lomb significantly dominates and monopolizes the eye health dietary supplement market.  Currently, year-to-date in 2021, on information and belief, Bausch & Lomb has an 80% share of the eye health dietary supplement market.  For the past several years, Bausch & Lomb's share of the eye health dietary supplement market has increased steadily, from 68% in 2016 to 79% to 2019.

80.     On information and belief, an agreement and/or mutual understanding was formed and exists between Defendants Bausch & Lomb and PF Consumer Healthcare 1 by which PF Consumer Healthcare 1 assists Bausch & Lomb to obtain and maintain monopoly power in the eye health supplement market. Defendants

knowingly, voluntarily, and intentionally, became parties to that agreement or mutual understanding.

81.     Defendants committed overt acts in furtherance of the conspiracy to monopolize and with the specific intent to monopolize or maintain a monopoly in the eye health supplement market, including but not limited to jointly filing and proceeding with a sham lawsuit (*i.e.,* the Patent Infringement Lawsuit) against Pharmavite in which Defendants falsely claim that Pharmavite is infringing Defendants' patent.  Pharmavite, however, cannot infringe for the reasons stated herein and in the declaratory judgment claims presented herein.

82.     At the time Defendants filed the complaint and Delaware Amended Complaint against Pharmavite, Defendants knew or objectively should have known that Pharmavite's Nature Made® Vision supplement does not infringe the '522 Patent at least for these reasons.

83.     As such, Defendants' Patent Infringement Lawsuit is objectively baseless, and Defendants filed their lawsuit against Pharmavite without a reasonable basis. On information and belief, PF Consumer Healthcare 1 joined in the filing of the sham Patent Infringement Lawsuit in conspiracy in order to, among other things, assist Bausch & Lomb in its monopolization or attempt to monopolize the market.

84.     On information and belief, Defendants filed the Patent Infringement Lawsuit in bad faith and with the specific intent to monopolize, attempt to monopolize, or maintain a monopoly in the eye heath supplement market, to chill competition in that market and increase revenues for Bausch & Lomb, and to divert sales from Pharmavite's Nature Made® Vision supplement to Bausch & Lomb's PreserVision® products. Defendants have filed similar sham lawsuits against other competitors also selling what they market as AREDS 2 supplements.

85.     On information and belief, through Defendants' conduct described herein and other conduct likely to be revealed in discovery, Bausch & Lomb has willfully and unlawfully maintained and enhanced its monopoly power.  At all relevant times, Bausch

& Lomb possessed and currently exercises monopoly power in the eye health supplement market, as demonstrated by Bausch & Lomb's high market share, barriers to entry, Bausch & Lomb's actual exclusion of competition, and its ability to charge supracompetitive prices in the relevant markets.

86.     Defendants' conduct as described herein constitutes exclusionary conduct within the meaning of Section 2 of the Sherman Act.

87.     On information and belief, Defendants' conduct as described herein has suppressed, and will suppress, competition and produced anticompetitive effects in the relevant markets, including causing Pharmavite antitrust injury and damages in the form of lost sales and lost market share proximately caused by Defendants' unlawful and anticompetitive practices.

88.     On information and belief, there is a dangerous probability that Defendants will succeed in unlawfully extending Bausch & Lomb's monopoly in the relevant markets through its anticompetitive conduct as described herein

89.     Defendants' conduct has no procompetitive benefit or justification. The anticompetitive effects of Bausch & Lomb's behavior outweigh any purported procompetitive justifications.

90.     As a result of Defendants' conduct, and the harm to competition caused by that conduct, Pharmavite has suffered continuing injuries to its business in an amount to be proven at trial and automatically trebled, as provided by 15 U.S.C. § 15.

91.     Pharmavite is also entitled to recover from Defendants the costs of suit, including reasonable attorneys' fees, as provided by 15 U.S.C. § 15.

## FOURTH CLAIM FOR RELIEF

(Declaratory Judgment of Non-Infringement of the '522 Patent, 28 U.S.C. § 2201 *et seq.*)

Against All Defendants

92.     Pharmavite incorporates paragraphs 1 through 91 as though fully set forth herein.

93.     A real, immediate, and justiciable controversy exists between Pharmavite and Defendants regarding the non-infringement of the '522 Patent, as evidenced, for example, by the Patent Infringement Lawsuit improperly filed by Defendants in the United States District Court of the District of Delaware, in which Defendants claim, *inter alia*, that Pharmavite is infringing one or more claims of the '522 Patent by selling the Nature Made® Vision supplement.

94.     Any manufacture, use, sale, offer for sale, and/or importation of the Nature Made® Vision supplement by Pharmavite, however, has not infringed and will not infringe, either directly or indirectly, any valid and enforceable claim of the '522 Patent, either literally or under the doctrine of equivalents.

95.     For example, and as detailed in paragraphs 28 to 35 above, the claims of the '522 Patent all require the administration of certain recited formulations to a particular subset of the population (persons with early AMD) and the achievement of a particular result (treating or stabilizing visual acuity loss).  But, Pharmavite does not administer the Nature Made® Vision supplement to any person, much less persons with early AMD.  And Pharmavite does not instruct persons with early AMD to take the product, or to treat or stabilize visual acuity loss with administration of the Nature Made® Vision supplement.  Nor does it market its Nature Made® Vision supplement as treating any disease, much less early AMD or any associated visual acuity loss.  To the contrary, the label of Pharmavite's Nature Made® Vision supplement states that the product "[h]elps support healthy vision and eye function" and contains the express disclaimer that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease."  For at least these reasons, Pharmavite does not infringe any claim of the '522 patent, the use of Pharmavite's Nature Made® Vision supplement in accordance with its label does not infringe any claim of the '522 Patent, and manufacture, use, sale, offer for sale, and/or importation of this product for use in accordance with its label does directly or indirectly infringe any claim of the '522 Patent.

96.     Pharmavite thus is entitled to a judicial declaration that it does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '522 Patent.

## FIFTH CLAIM FOR RELIEF

(Declaratory Judgment of Invalidity of the '522 Patent, 28 U.S.C. § 2201 *et seq.*)

Against All Defendants

97.     Pharmavite incorporates paragraphs 1 through 96 as though fully set forth herein.

98.     A real, immediate, and justiciable controversy exists between Pharmavite and Defendants regarding the invalidity of the '522 Patent, as evidenced, for example, by the Patent Infringement Lawsuit improperly filed by Defendants in the United States District Court of the District of Delaware, in which Defendants claim that Pharmavite is infringing the '522 Patent by selling the Nature Made® Vision supplement.

99.     The claims of the '522 Patent are invalid for failure to comply with one or more of the conditions of patentability under Title 35 of the United States Code and related judicial doctrines, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112, and/or obviousness-type double patenting.

100.    For example, all claims of the '522 Patent are invalid under 35 U.S.C. § 112 at least because the patent specification fails to provide a written description that conveys with reasonable clarity to a person of ordinary skill in the art that, as of its effective filing date, the purported inventors of the '522 Patent were in possession of the subject matter claimed therein.  For example, the specification would not provide a person of ordinary skill in the art with a reasonable expectation that the recited compositions would achieve the claimed results.  Moreover, Defendants have asserted that the claims of the '522 Patent cover the use of the AREDS 2 formula; however, there is no disclosure of that formula in the '522 Patent or sufficient blazemarks that would lead the persons of ordinary skill to that formula.  In fact, the AREDS 2 study did not even commence until well over a year after the application leading to the '522

Patent was filed and several years after the applications to which the '522 Patent claims priority. A mere wish or plan for obtaining a claimed invention, as here, is not adequate to meet the written description or enablement requirements.

101. The claims of the '522 Patent are also invalid under 35 U.S.C. § 112 at least because the specification fails to provide an enabling disclosure that teaches a person of ordinary skill in the art how to make and use the full scope of the claimed subject matter without undue experimentation.

102. To the extent that Defendants assert that the claims of the '522 Patent are supported by the specification, the claims would have been anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 because any purported invention was known and/or obvious in view of the prior art including at least the prior art cited on the face of the patent, including but not limited to the AREDS clinical trials and AREDS Research Group, "The Age-Related Eye Disease Study (AREDS)," AREDS Report No. 1, Control Clin. Trials, 1999 December, Vol. 20(6), 573-600.

103. Further, the '522 Patent is or should be expired in view of the expiration of the '297 Patent, or alternatively, the claims of the '522 Patent are invalid under the doctrine of obviousness-type double patenting.

104. Pharmavite thus is entitled to a judicial declaration that the claims of the '522 Patent are invalid.

## SIXTH CLAIM FOR RELIEF

(Declaratory Judgment of Patent Misuse, 28 U.S.C. § 2201 *et seq.*)

Against All Defendants

105. Pharmavite incorporates paragraphs 1 through 104 as though fully set forth herein.

106. A real, immediate, and justiciable controversy exists between Pharmavite and Defendants regarding Defendants' misuse of the '522 Patent, as evidenced, for example, by the Patent Infringement Lawsuit improperly filed by Defendants in the United States District Court of the District of Delaware, in which Defendants claim

that Pharmavite is infringing the '522 Patent by selling the Nature Made® Vision supplement.

107.   The Patent Infringement Lawsuit brought by Defendants in Delaware is an improper effort to broaden impermissibly the scope of the claims of the '522 Patent to cover compositions, with anti-competitive effect against Pharmavite and the industry.

108.   Defendants knew or should have known at the time of filing the Patent Infringement Lawsuit and the Delaware Amended Complaint that none of the claims of the '522 Patent cover a composition, but rather all are directed to methods-of-use that require administration to a particular subset of the population (persons with early AMD) for a particular purpose (treating or stabilizing visual acuity loss).  Defendants knew or should have known at the time of filing the complaint and the Delaware Amended Complaint that Pharmavite does not practice the methods-of-use claimed in the '522 Patent, nor does it induce anyone to infringe that patent or contribute to any such infringement.

109.   In particular, Defendants knew or should have known at the time of filing the Patent Infringement Lawsuit and the Delaware Amended Complaint that Pharmavite does not market the Nature Made® Vision supplement as treating any disease, much less AMD or any associated visual acuity loss.  To the contrary, Defendants knew or should have known at the time of filing that the label of Pharmavite's Nature Made® Vision supplement states that the product "[h]elps support healthy vision & eye function" and contains the express disclaimer that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease."

110.   In asserting the '522 Patent against Pharmavite, Defendants are seeking to improperly extend the patent monopoly of their now-expired '297 Patent, which includes composition claims that, during the patent's enforceable term and if valid, could be asserted, and were asserted by Defendants, to prevent the sale of the claimed composition in the United States, regardless of how the composition is to be used.

Defendants have not asserted the '297 Patent against Pharmavite, nor could they, given the patent's expiration as of March 23, 2021.

111.    On information and belief, Defendants purposefully and intentionally brought the Patent Infringement Lawsuit against Pharmavite in bad faith and with the specific intent to chill competition and increase revenues for Bausch & Lomb, and to divert sales from Pharmavite's Nature Made® Vision supplement to Bausch & Lomb's PreserVision® products.  The Patent Infringement Lawsuit is a sham litigation filed for an improper and anti-competitive purpose, and constitutes patent misuse.

112.    Defendants' acts in asserting the '522 Patent against Pharmavite's Nature Made® Vision supplement are not reasonably within the scope of the patent grant and do not relate to subject matter within the scope of the patent claims.  Such subject matter is limited to narrow methods-of-use, not the AREDS 2 composition itself. Defendants' attempt to enforce the '522 Patent method-of-use claims as if they covered the composition that was the subject of the expired '297 Patent claims imposes an unreasonable restraint on competition as Defendants no longer have any valid grounds to exclude AREDS 2 formulations from the market.

113.    Because Defendants have misused the '522 Patent, that patent has been rendered unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Pharmavite prays for judgment and relief against Defendants, jointly and severally, as follows:

1.    For temporary, preliminary, and permanent injunctive relief enjoining Bausch & Lomb and its officers, agents, heirs, servants, employees, successors, and assigns, and those persons in active concert, participation or privity with them, or any of them, from using any false description or false representation with respect to the labeling, advertising, marketing, and/or promoting of Bausch & Lomb's PreserVision® products, including but not limited to:

    a. Stating that its PreserVision® dietary supplements contain a "patented" formula;

    b. Making improper, unlawful, false, and/or misleading "disease claims" regarding PreserVision® without FDA approval, in violation of FDCA, 21 U.S.C. § 343(r)(6)(C) and the implementing regulations, as well as California Sherman Food, Drug & Cosmetic Law, Cal. Health & Safety Code § 110670; and

    c. Making any allegation that Pharmavite is infringing the '522 Patent in connection with the Pharmavite Nature Made® Vision supplement;

2. That judgment be entered against Defendants for all damages sustained by Pharmavite on account of, *inter alia*, Defendants' violations of 15 U.S.C. § 2, as well as treble damages as available under 15 U.S.C. § 2;

3. For restitution of the amounts Bausch & Lomb acquired through the unfair, unlawful, and fraudulent business practices and false advertising described herein;

4. For declaratory judgment that the making, using, selling, offering for sale, or importation of the Nature Made® Vision supplement by Pharmavite has not infringed and will not infringe, either directly or indirectly, any claim of the '522 Patent, either literally or under the doctrine of equivalents;

5. For declaratory judgment that all claims of the '522 Patent are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code and related judicial doctrines, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112 and/or obviousness-type double patenting;

6. For declaratory judgment that all claims of the '522 Patent are unenforceable due to Defendants' misuse of that patent;

7. For a determination that this is an exceptional case and that attorneys' fees be awarded in favor of Pharmavite;

PHARMAVITE LLC'S COMPLAINT

8.      That Pharmavite be awarded costs, attorneys' fees, and pre-judgment and post-judgment interest; and

9.      That Pharmavite be awarded other and further relief, both general and special, at law and equity, as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Pharmavite hereby demands a jury of any and all issues so triable of right.

Dated:  December 8, 2021            TATRO TEKOSKY SADWICK LLP

By: ___/s/ *René P. Tatro*_____
René P. Tatro, Esq.
Attorneys for Plaintiff Pharmavite LLC

Of counsel:

Raymond N. Nimrod (*pro hac vice* pending)
Matthew D. Robson (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, NY  10010
Telephone:   (212) 849-7000
Facsimile:    (212) 849-7100
E-mail:         raynimrod@quinnemanuel.com
                 matthewrobson@quinnemanuel.com

Attorneys for Plaintiff Pharmavite LLC

PHARMAVITE LLC'S COMPLAINT