**AKIN GUMP STRAUSS HAUER & FELD LLP**
HYONGSOON KIM (SBN 257019)
kimh@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA  92614
Tel:   949-885-4100

COREY W. ROUSH (*pro hac vice*)
croush@akingump.com
M. ANDREW HOLTMAN (*pro hac vice*)
andy.holtman@akingump.com
J. MATTHEW SCHMITTEN (*pro hac vice*)
mschmitten@akingump.com
2001 K Street, N.W.
Washington, DC 20006-1037
Tel:  202-887-4000

STEVEN D. MASLOWSKI (*pro hac vice*)
smaslowski@akingump.com
1735 Market Street, 12th Floor
Philadelphia, PA 19103-7501
Tel:  215-965-1200

Attorneys for Defendant
BAUSCH & LOMB INCORPORATED

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHARMAVITE, LLC, a California limited liability company;<br><br>                               Plaintiffs,<br><br>       v.<br><br>BAUSCH & LOMB INCORPORATED, A New York corporation, and PF CONSUMER HEALTHCARE 1 LLC, a Delaware corporation;<br>                               Defendants. | Case No. 2:21-cv-09507-AB-MAA<br><br>**DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY OR TRANSFER**<br>Date: June 10, 2022<br>Time: 10:00am<br>Ctrm: 7B<br>Judge: Hon. André Birotte Jr. |

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF RELEVANT ALLEGED FACTS ..................................... 2

      A.    B&L Successfully Enforces Its '297 and '522 Patents ...................... 2

      B.    Pharmavite Attempts to Avoid B&L's Efforts to Enforce its Patents in Delaware ............................................................................................ 4

III.  LEGAL STANDARD ...................................................................................... 4

IV.   ARGUMENT .................................................................................................... 5

      A.    The Court should dismiss Pharmavite's non-conspiracy Sherman Act § 2 claims (Claims I and II) under Rule 12(b)(6) for failing to plausibly allege facts supporting the required elements ........................................... 5

            1.    The Court should dismiss Pharmavite's Claims I and II for failure to allege exclusionary, predatory, or anticompetitive conduct ............ 6

            2.    This Court should also dismiss Pharmavite's Claims I and II for failure to allege monopoly power, or its dangerous probability, with respect to an "eye health dietary supplement" market ............... 11

      B.    Pharmavite's Claim III (Conspiracy to Monopolize) should be dismissed for failure to plausibly allege a conspiracy between the defendants or an overt act in furtherance of the same .......................................................... 13

      C.    The Court should dismiss all of Pharmavite's Sherman Act § 2 claims (Claims I, II, and III) because the alleged facts could not lead to antitrust injury ............................................................................................ 15

      D.    B&L's patent lawsuit against Pharmavite is immune from antitrust challenge under *Noerr-Pennington* .......................................................... 18

      E.    The Court should dismiss Pharmavite's patent claims (Claims IV, V, and VI) based on the first to file rule .......................................................... 20

      F.    In the alternative, the Court should transfer or stay this action pending resolution of the patent litigation in Delaware ....................................... 21

V.    CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab. v. Mylan Pharm., Inc.*,
  No. 05 C 6561, 2007 WL 625496 (N.D. Ill. Feb. 23, 2007) .............................20

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  No. C 11–2243 CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012)...................16

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ...........................................................................6

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ...........................................................................21

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.
  Publ'ns, Inc. (Harcourt)*,
  108 F.3d 1147 (9th Cir. 1997) ....................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................5

*ASM Am., Inc. v. Genus, Inc.*,
  No. 01-2190 EDL, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002)...........................23

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990).........................................................................................17

*Bausch & Lomb Inc. v. Advanced Theraceuticals LLC*,
  No. 6:20-cv-06440-CJS (W.D.N.Y.) ...................................................................3

*Bausch & Lomb Inc. v. EyeScience Labs LLC.*,
  No. 1:21-CV-730-LPS (D. Del.)..........................................................................4

*Bausch & Lomb Inc. v. Lunovus LLC*,
  No. 2:20-cv-1766-GMB (N.D. Ala.) ....................................................................3

*Bausch & Lomb Inc. v. MacuHealth*,
  No. 6:21-cv-06141 (W.D.N.Y.)...........................................................................3

*Bausch & Lomb Inc. v. Nature Made Nutritional Prods.*,
    No. 1:21-cv-1030-LPS (D. Del.) ................................................................*passim*

*Bausch & Lomb Inc. v. New Era Real Est. Sols. LLC*, No. 1:21-cv-731-LPS
    (D. Del.) ...........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4, 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977).................................................................................15, 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)........................................................................................19

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)........................................................................................17

*Catch Curve, Inc. v. Venali, Inc.*,
    519 F. Supp. 2d 1028 (C.D. Cal. 2007) ...........................................................6

*City of Oakland v. Oakland Raiders*,
    No. 18-CV-07444-JCS, 2019 WL 3344624 (N.D. Cal. July 25, 2019) .............18

*Complete Genomics, Inc. v. Illumina, Inc.*,
    No. 21-CV-00217-WHO, 2021 WL 1197096 (N.D. Cal. Mar. 30, 2021) .........23

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961)........................................................................................19

*Eastman v. Quest Diagnostics Inc.*,
    No. 15-CV-00415-WHO, 2016 WL 1640465 (N.D. Cal. Apr. 26, 2016),
    *aff'd*, 724 F. App'x 556 (9th Cir. 2018) .........................................................13

*EMC Corp. v. Bright Response*,
    LLC, No. C–12–2841 EMC, 2012 WL 4097707 (N.D. Cal. Sept. 17,
    2012) ...............................................................................................................21

*Energy Automation Sys., Inc. v. Saxton*,
    618 F. Supp. 2d 807 (M.D. Tenn. 2009) ..........................................................8

iii

*Fed. Trade Comm'n v. AbbVie Inc.*,
   976 F.3d 327 (3d Cir. 2020), *cert. denied sub nom.*, 141 S. Ct. 2838
   (2021) ................................................................................................7

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ...........................................................15

*Frost v. LG Elecs., Inc.*,
   801 F. App'x 496 (9th Cir. 2020) ....................................................15

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
   378 F. Supp. 3d 842 (N.D. Cal. 2019).......................................6, 7, 11

*In re German Auto. Mfrs. Antitrust Litig.*,
   392 F. Supp. 3d 1059 (N.D. Cal. 2019)............................................15

*Golo, LLC v. Goli Nutrition Inc.*,
   No. 2:21-cv-02348-VAP, 2021 WL 3360134 (C.D. Cal. July 30, 2021)...........21

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
   806 F.3d 162 (3d Cir. 2015) ............................................................20

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
   No. 2:16-CV-1421-SVW-FFM, 2016 WL 7324091 (W.D. Cal. Oct. 26,
   2016), *aff'd*, 733 F. App'x 380 (9th Cir. 2018) ................................18

*In re Humira (Adalimumab) Antitrust Litig.*,
   465 F. Supp. 3d 811 (N.D. Ill. 2020) ...............................................20

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   Nos. CV-00-20905 RMW, C-05-02298 RMW, C-05-00334 RMW, C-06-
   00244 RMW, 2007 WL 4062845 (N.D. Cal. Nov. 15, 2007) ............21

*Kinderstart.com LLC v. Google, Inc.*,
   No. C 06-2057 JF (RS), 2007 WL 831806 (N.D. Cal. Mar. 16, 2007) ..............17

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)..........................................................................17

*Lloyd's Material Supply Co. v. Regal Beloit Corp.*,
   No. CV 16-8027-DMG-JPRX, 2017 WL 5172206 (C.D. Cal. June 27,
   2017) ..................................................................................................3

iv

*Manistee Town Ctr. v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000) ........................................................................3

*Med Vets Inc. v. VIP Petcare Holdings, Inc.*,
    No. 18-CV-02054-MMC, 2019 WL 1767335 (N.D. Cal. Apr. 22, 2019),
    *aff'd*, 811 F. App'x 422 (9th Cir. 2020) ............................................................13

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ....................................................................5, 6

*In re Musical Instruments*,
    798 F.3d 1186 (9th Cir. 2015) ......................................................................14

*Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs*,
    850 F.2d 904 (2d Cir. 1988) ...........................................................................9

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    No. 17-CV-05005-LB, 2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ...............18

*Paladin Assocs., Inc. v. Mont. Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ................................................................14, 16

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ......................................................................10

*Pool Water Prods. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) ......................................................................17

*POURfect Prods. v. KitchenAid*,
    No. CV-09-2660-PHX-GMS, 2010 WL 1769413 (D. Ariz. May 3, 2010) ...9, 17

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ........................................................................................7

*Prosterman v. Am. Airlines, Inc.*,
    747 F. App'x 458 (9th Cir. 2018) ..................................................................14

*Sandisk Corp. v. STMicroelectronics, Inc.*,
    No. C 04-4379 JF (RS), 2008 WL 4615605 (N.D. Cal. Oct. 17, 2008) ............20

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

*Secondary Life Three LLC v. TransAmerica Life Ins. Co.*,
 No. 20-CV-09034-AB (KSX), 2021 WL 2191219 (C.D. Cal. Feb. 24,
 2021) (Birotte, J.) ........................................................................................22

*SmileCare Dental Grp. v. Delta Dental Plan*,
 88 F3d 780 (9th Cir. 1996) ............................................................................6

*Sosa v. DIRECTV, Inc.*,
 437 F.3d 923 (9th Cir. 2006) .......................................................................19

*Spectrum Sports, Inc. v. McQuillan*,
 506 U.S. 447 (1993)................................................................................5, 16

*Stephens v. Trump Org. LLC*,
 205 F. Supp. 3d 305 (E.D.N.Y. 2016) ...........................................................8

*Tampa Elec. Co. v. Nashville Coal Co.*,
 365 U.S. 320 (1961).......................................................................................7

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
 546 F.3d 991 (9th Cir. 2008) .......................................................................20

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
 No. SACV 15-246-JLS-DFMX, 2015 WL 4545187 (C.D. Cal. July 8,
 2015) .......................................................................................................3, 20

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
 709 F. Supp. 2d 821 (C.D. Cal. 2010) .........................................................17

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
 117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......................................................19

*United Mine Workers v. Pennington*,
 381 U.S. 657 (1965)......................................................................................19

*United States v. Yellow Cab Co.*,
 332 U.S. 218 (1947)......................................................................................14

*Ventress v. Japan Airlines*,
 486 F.3d 1111 (9th Cir. 2007) .....................................................................22

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)............................................................................6

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
   868 F.3d 132 (3d Cir. 2017) ..........................................................16

*Wilson v. Playtika, Ltd.*,
   349 F. Supp. 3d 1028 (W.D. Wash. 2018) ......................................8

**Statutes**

28 U.S.C.

   § 1404..............................................................................................24

   § 1404(a) .........................................................................................22

35 U.S.C.

   § 292(c) ...........................................................................................10

**Other Authorities**

*2020 Patent Litigation: Year in Review*, JD Supra (Mar. 25, 2021) ....................22

U.S. Const. Amend. I ......................................................................................18, 19

P. Areeda & D. Turner, Antitrust Law ¶ 737b (1978)............................................17

C. Wright et al., Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011)............................21

## I.        **INTRODUCTION**

This suit is plainly an attempt by Pharmavite, LLC ("Pharmavite") and its affiliates to avoid a patent infringement suit in the District of Delaware brought by Bausch & Lomb Incorporated ("B&L") over eight months ago.  Pharmavite's Complaint spends pages arguing that its product does not infringe B&L's patents in hopes that this Court rather than the Delaware court will make that determination.  It should not.  The patent infringement suit was properly filed first in Delaware.

Pharmavite's Complaint suggests that because its product purportedly does not infringe B&L's patents, B&L committed antitrust violations when it filed its patent infringement suit.  Pharmavite is wrong.  Indeed, even taking Pharmavite's allegations as true, they do not support Pharmavite's antitrust claims based on Section 2 of the Sherman Act.  They do not show that B&L's patent infringement suit is a sham; they do not allege anticompetitive exclusion; and they do not support the idea that the filing of a single patent infringement suit against Pharmavite gives B&L a monopoly, gives B&L any chance of establishing a monopoly, or that B&L has some intent to monopolize the alleged "eye health dietary supplement market."

Pharmavite does not allege—as it must to establish a Section 2 claim—that B&L is trying to exclude Pharmavite or anyone else from competing in the alleged market.  Nor can it.  Factually speaking, even if B&L wins its patent lawsuit, Pharmavite will not be excluded from the "eye health dietary supplement market;" it would only be foreclosed from selling a particular product labeled and marketed in a way that infringes B&L's patent rights.  Pharmavite also does not allege—as it must—that the filing of B&L's patent infringement suit (as opposed to the potential outcome) has had any effect on—much less caused antitrust injury to—Pharmavite's alleged market.  In fact,

Pharmavite tacitly acknowledges that it is continuing to sell its product during the pendency of the patent infringement lawsuit.[1]  Such facts do not a Section 2 case make.

Put simply, this suit is not a valid antitrust suit.  Pharmavite has not only failed to allege facts on which a court could grant antitrust relief, it has alleged facts that affirmatively establish that dismissal should be with prejudice.

## II.    STATEMENT OF RELEVANT ALLEGED FACTS

### A.    B&L Successfully Enforces Its '297 and '522 Patents

B&L is the joint owner of U.S. Patent No. 8,603,522 ("the '522 Patent"), and the exclusive licensee of all rights in the field of ophthalmology.  These rights include the right to market and sell products embodying the invention described in the patent, including its PreserVision® AREDS and AREDS 2 Formula products. *See* BAUSCH & LOMB PRESERVISION®, http://www.preservision.com (last visited Mar. 29, 2022).[2]  These rights also include the right to enforce the patent.

To that end, B&L has successfully enforced the '522 Patent and the related, now-expired U.S. Patent No. 6,660,297 ("the '297 Patent")[3] against multiple companies that infringed those patents.  *See* Compl. ¶¶ 25, 61, 70–71, 84.  Nearly all those cases have settled.  Given the strength of B&L's claims, those cases typically concluded with the

---

[1]  B&L is not seeking emergency injunctive relief in the Delaware matter or anywhere else to prevent Pharmavite from selling any products during the pendency of B&L's suit against Pharmavite.  *See* Am. Compl., *Bausch & Lomb Inc. v. Nature Made Nutritional Prods.* (the "Delaware Matter"), No. 1:21-cv-1030-LPS (D. Del. Dec. 3, 2021), ECF No. 9 (seeking injunctive relief following a decision, not while the case proceeds).

[2]  PreserVision® is an eye vitamin and mineral supplement.  It contains a nutrient formula that was studied by the National Institute of Health's National Eye Institute ("NEI") in people with Age-related Macular Degeneration ("AMD").

[3]  The '297 Patent expired in March 2021, and the '522 Patent will expire in January 2026.  Only the '522 Patent has been asserted against Pharmavite and its related entities.

defendant admitting that the '297 Patent and/or '522 Patent was valid and infringed by the defendant and the defendant amending its product to a non-infringing alternative.[4] *See, e.g.*, Consent Decree & Final J., *Bausch & Lomb Inc. v. New Era Real Est. Sols. LLC*, No. 1:21-cv-731-LPS (D. Del. Oct. 15, 2021), ECF No. 9; Consent J., *Bausch & Lomb Inc. v. Lunovus LLC*, No. 2:20-cv-1766-GMB (N.D. Ala. Mar. 25, 2021), ECF No. 42.[5]

Critically, through years of litigation to enforce B&L's rights under the '297 and '522 Patents,[6] no court has found that either patent was invalid, unenforceable, or not infringed by any patent litigation defendant.

---

[4] A number of previous defendants currently sell products that compete in the market Pharmavite alleges here. *See* Nutrivein Quercetin 800mg with Zinc, AMAZON, https://www.amazon.com/Nutrivein-AREDS-Eye-Vitamins-All-Natural/dp/B082PHKWFB (last visited Mar. 29, 2022) (defendant in *New Era Real Est. Sols. LLC*, No. 1:21-cv-731-LPS); Lunovus Visual Advantage Macular Support Plus Multivitamin, AMAZON, https://www.amazon.com/Visual-Advantage-AREDS-Multi-Vitamin/dp/B06XYGGKV7 (last visited Mar. 29, 2022) (defendant in *Lunovus LLC*, No. 2:20-cv-1766-GMB); Pro-Optic® Traditional, ADVANCED THERECEUTICALS, https://adv-tc.com/product/pro-optic-traditional-formula/ (last visited Mar. 29, 2022) (defendant in *Bausch & Lomb Inc. v. Advanced Theraceuticals LLC*, No. 6:20-cv-06440-CJS (W.D.N.Y. filed June 30, 2020)); MacuHealth PLUS+, MACUHEALTH, https://www.macuhealth.com/product/macuhealth-plus/ (last visited Mar. 29, 2022) (defendant in *Bausch & Lomb Inc. v. MacuHealth*, No. 6:21-cv-06141 (W.D.N.Y. filed Feb. 9, 2021)).

[5] This Court and other courts in this Circuit regularly take judicial notice of the outcomes in publicly filed patent lawsuits that underlie allegations of sham litigation. *See, e.g.*, *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000); *Lloyd's Material Supply Co. v. Regal Beloit Corp.*, No. CV 16-8027-DMG-JPRX, 2017 WL 5172206, at *1 (C.D. Cal. June 27, 2017); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV 15-246-JLS-DFMX, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) (collecting cases).

[6] As recently as this month, B&L successfully obtained a default judgment permanently enjoining EyeScience Labs, LLC from selling its infringing Macular Health Formula product based on B&L's '522 Patent. *See* Order Granting Pls.' Mot. for Default

**B.      Pharmavite Attempts to Avoid B&L's Efforts to Enforce its Patents in Delaware.**

On July 15, 2021, B&L sued Pharmavite and Nature Made Nutritional Products for infringement of the '522 Patents in the District of Delaware.  *See* Compl. ¶ 26.  On December 3, 2021, B&L filed an Amended Complaint, adding Pharmavite's related parent entities Otsuka Pharmaceuticals Co., Ltd. and Otsuka Nutraceuticals Emerging Ventures LLC.  *See* Am. Compl., Delaware Matter.[7]  Five days later, on December 8, 2021, Pharmavite filed this Complaint, seeking to litigate B&L's patent claims in this Court by way of a declaratory judgment action, alleging that B&L's patent lawsuit in Delaware is a "sham,"[8] and complaining of B&L's marketing of its AREDS 2 products—essentially ignoring the first to file rule and the fact that its non-antitrust claims are more properly compulsory counterclaims in the Delaware Matter.[9]

## III.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is required when a complaint fails to set forth sufficient factual allegations that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must make "more than an unadorned, the-defendant-

---

J. & Permanent Inj. Relief, *Bausch & Lomb Inc. v. EyeScience Labs LLC.*, No. 1:21-CV-730-LPS (D. Del. Mar. 7, 2022), ECF No. 18.

[7] Nature Made Nutritional Products is "a wholly owned, non-operating subsidiary of Pharmavite [LLC]."  *See* Decl. of Brittney Pruitt (Division Vice President and Corporate Controller for Pharmavite LLC) ¶ 21, Delaware Matter, ECF No. 24.  Both it and Pharmavite LLC (the plaintiff here) are named as defendants in the Delaware Matter. *See* Am. Compl., Delaware Matter.

[8] As discussed *infra* Section IV.D, under the *Noerr-Pennington* doctrine, the filing of a lawsuit is protected from antitrust allegations unless it is a sham.

[9] On February 24, 2022, Pharmavite filed a motion to dismiss in the Delaware Matter for improper venue and for failure to state a claim under Rule 12(b)(6).  Briefing is currently underway on that motion.  *See* Delaware Matter, ECF Nos. 18–35.

1    unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

2    (citations omitted).  It must offer more than "labels and conclusions," more than a

3    "formulaic recitation of the elements of a cause of action," and more than "naked

4    assertion[s] devoid of further factual enhancement." *Id.* (citations omitted).

### IV.   ARGUMENT

#### A.   The Court should dismiss Pharmavite's non-conspiracy Sherman Act § 2 claims (Claims I and II) under Rule 12(b)(6) for failing to plausibly allege facts supporting the required elements.

10       To make a claim for monopolization under the Sherman Act, a plaintiff must

11   plausibly allege that the defendant "(1) possessed monopoly power in the relevant

12   market, (2) willfully acquired or maintained that power through exclusionary conduct

13   and (3) caused antitrust injury."  *MetroNet Servs. Corp. v. Qwest Corp.,* 383 F.3d 1124,

14   1130 (9th Cir. 2004) (citing *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich*

15   *Legal & Pro. Publ'ns, Inc. (Harcourt)*, 108 F.3d 1147, 1151 (9th Cir. 1997)).  A claim

16   for "attempted" monopoly is similar, requiring plausible allegations "(1) that the

17   defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent

18   to monopolize and (3) a dangerous probability of achieving monopoly power."

19   *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

20       Here, Pharmavite has made little attempt to show any acquisition or maintenance

21   of monopoly power "through exclusionary" or "predatory or anticompetitive conduct."

22   Its allegations related to the Delaware Matter and B&L's marketing of its AREDS 2

23   product miss the mark with neither presenting a case of anticompetitive exclusion.

24   Moreover, even if Pharmavite *had* alleged some exclusionary conduct, it certainly has

25   not done so with respect to "the relevant market" because both sets of allegations relate

26   only to AREDS 2 products, but Pharmavite alleges a broader antitrust market ("eye

27

28

health dietary supplement market") without explaining how B&L has monopolized or could monopolize *that* market.

       1.   <u>The Court should dismiss Pharmavite's Claims I and II for failure to allege exclusionary, predatory, or anticompetitive conduct.</u>

       Antitrust law does not punish the mere possession or acquisition of monopoly power.  "To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful [under § 2] unless it is accompanied by an element of anticompetitive conduct."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1183 (9th Cir. 2016).  The key requirement is *exclusion* (or *foreclosure*): "[T]o be actionable under section 2, a monopolist's conduct must foreclose competition in a substantial share of the line of commerce affected."  *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 842, 841 (N.D. Cal. 2019) (citations omitted); *see also, e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1036 (C.D. Cal. 2007) (equating the "predatory or anticompetitive" element of attempted monopolization claims with a requirement for alleging "exclusionary" conduct) (quoting *SmileCare Dental Grp. v. Delta Dental Plan*, 88 F3d 780, 783 (9th Cir. 1996)).  Indeed, the Ninth Circuit has included "exclusionary conduct" in its articulation of the elements for a monopolization claim.  *See MetroNet Servs.*, 383 F.3d at 1130 (describing the second element of a monopolization claims as "wil[l]fully acquired or maintained [monopoly] power through exclusionary conduct") (citing *Harcourt*, 108 F.3d at 1151).  "Establishing that a substantial share of the relevant market is foreclosed is necessary because, for the monopolist's conduct to adversely affect competition, the opportunities for other traders to enter into or remain in that market must be significantly limited."  *Genus Lifesciences Inc.*, 387 F. Supp. 3d at 841 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961)).

The Complaint suggests two sources of potentially anticompetitive conduct: (1) B&L's Delaware patent lawsuit, and (2) B&L's marketing of its AREDS 2 formula products as "patented" and making disease claims.  Neither meets Pharmavite's burden of plausibly pleading exclusionary conduct.  Pharmavite has not alleged that it or any other "eye health dietary supplement" provider has been foreclosed from any distribution channels as a result of either B&L's infringement suit against Pharmavite or B&L's marketing—much less alleged that "a substantial share of the relevant market is foreclosed" such that "other traders [cannot] enter into or remain in [the] market." *Id.* Without alleging anticompetitive foreclosure, Pharmavite has not pled a monopolization or attempted monopolization claim, and its First and Second Claims for Relief should be dismissed.

> a.    Pharmavite fails to allege any anticompetitive exclusion from the patent lawsuit against it in Delaware.

Where, as here, a plaintiff has alleged that a lawsuit is a sham, the plaintiff must show that the defendant has excluded the plaintiff from a market "through the use [of] the governmental *process*—as opposed to the *outcome* of that process . . . ."  *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61 (1993) (alteration in original) (citations omitted).  In other words, a plaintiff must allege that the *filing* of the lawsuit—not its *potential outcome*—is exclusionary.

For this reason, the typical sham litigation fact pattern involves either a pharmaceutical patent suit, where the Hatch-Waxman Act *excludes* a generic competitor from selling products by virtue of an automatic 30-month stay of FDA approval that occurs *upon the filing of a lawsuit*, or allegations of a pattern or series of harassing sham litigations designed to cost so much that the defendant stops competing rather than endure more litigation.  *See, e.g.*, *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 361 (3d Cir. 2020), *cert. denied sub nom.*, 141 S. Ct. 2838 (2021) ("The automatic, 30-month stay is a collateral injury the defendant's mere use of legal process invariably

1   inflicts.  And though the stay ends if a court holds the defendant's patent is invalid or

2   has not been infringed, it does not otherwise depend on a suit's outcome.  Thus, a

3   plaintiff may be able to show a defendant was indifferent to the outcome of its

4   infringement suit, and the automatic, 30-month stay was an anticompetitive weapon the

5   defendant tried to wield.").

6         In either case, the underlying theory of harm is that the litigation *itself* excludes a

7   competitor and thereby harms competition and consumers.  Here, Pharmavite has not

8   alleged any anticompetitive exclusion as a result of B&L bringing the patent

9   infringement suit.  It has not alleged that it has been shut out of the relevant market;

10  rather it has tacitly acknowledged that it continues to sell the allegedly infringing

11  products during the pendency of the Delaware Matter, *see* Compl. Figure 4 (screenshot

12  of Pharmavite AREDS 2 product listing on Amazon)—a fact easily confirmed[10] with a

13  search on Google or Amazon or a walk down the aisle at CVS, Walgreens, or Target

14  (all of which carry Pharmavite's AREDS 2 product).[11]

---

[10]  *See Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1042–43 (W.D. Wash. 2018) (explaining that the court may take judicial notice of information derived from a publicly accessible website); *Energy Automation Sys., Inc. v. Saxton*, 618 F. Supp. 2d 807, 810 (M.D. Tenn. 2009) (taking judicial notice of "material about [the plaintiff] on an Internet bulletin board" that was "posted" by the defendant); *cf. also Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 n.7 (E.D.N.Y. 2016) ("A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (citations omitted).

[11]  *See* Nature Made Vision with AREDS 2 Formula, Eye Vitamins with Lutein & Zeaxanthin, Vitamin C, Vitamin E, Zinc, and Copper, Helps Support Healthy Vision and Eye Function, 60 Softgels, AMAZON, https://www.amazon.com/dp /B08XXLT75V/ref=cm_sw_em_r_mt_dp_F1G22R2XXH2PJN9JZ56S (last visited Mar. 29, 2022); Nature Made Vision with AREDS 2 Formula, 60 CT, CVS PHARMACY, https://www.cvs.com/shop/nature-made-vision-with-areds-2-formula-60-ct-prodid- 277734-reviews?skuId=277734; (last visited Mar. 29, 2022); ICaps AREDS2 Eye Vitamin, Softgels, WALGREENS, https://www.walgreens.com/store/c/ icaps-areds2-eye-vitamin,-softgels/ID=prod6284063-product?ext=gooContact+

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

        b.    <u>Pharmavite does not allege that B&L's marketing had more than a "de minimis" effect on competition.</u>

When a plaintiff asserts antitrust claims based on a defendant's marketing, as Pharmavite has done here, the plaintiff must overcome an exceptionally high burden to show that the "advertising constituted exclusionary conduct" because there is a "presumption that the effect on competition . . . was *de minimis.*" *Harcourt*, 108 F.3d at 1152 (emphasis added).  To overcome that presumption, a plaintiff must allege that the marketing statements were "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Id.* (internal citation omitted).  A plaintiff "must satisfy all six elements to overcome [the] *de minimis* presumption. Otherwise, [it] fails to prove its claim." *Id.* (emphasis added) (quoting *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs,* 850 F.2d 904, 916 (2d Cir. 1988)); *see also POURfect Prods. v. KitchenAid,* No. CV-09-2660-PHX-GMS, 2010 WL 1769413, at *4 (D. Ariz. May 3, 2010) ("The Ninth Circuit requires a preliminary showing of significant and more-than-temporary harmful effects on competition (and not merely upon a competitor or customer) before [disparaging comments about a rival's product] can rise to the level of [anticompetitive] conduct.")

Lenses+SSCContact+Lensesonline&gclsrc=aw.ds&&gclid=EAIaIQobChMI4ICGiP-59gIVGFRgCh0M9w1MEAQYAiABEgJtHvDBwE (last visited Mar. 29, 2022); and Nature Made Vision with Areds 2 Formula Supplements - 60ctm, Target, https://www.target.com/p/nature-made-vision-with-areds-2-formula-supplements-60ct/-/A-81858338?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tmnv&DFA=71700000090829629&CPNG=PLA_DVM%2Ba064R000012L9zwQAC-Nature+Made_Google+(PLA)_+Feb-Mar_Q1+2022_Flight-597446&adgroup=PLA_Nature+Made&LID=700000001393753pgs&network=g&device=c&location=1014895&gclid=EAIaIQobChMIge3-g-PF9gIVdcyzCh1QRQCrEAQYASABEgJy0fD_BwE&gclsrc=aw.ds (last visited Mar. 29, 2022).

(citing *Harcourt* and 3 P. Areeda & D. Turner, Antitrust Law ¶ 737b at 278 (1978)) (internal quotation marks omitted) (alterations in original).[12]

Here, Pharmavite fails to validly allege at least four of the six elements required to overcome the presumption. Its failure to validly allege that the claims are "clearly false" is perhaps the plainest. The only assertions that B&L's marketing is "false" or "literally false" are at paragraphs 51 and 52 of the Complaint; both refer to B&L continuing to market its product as "patented" after the '297 Patent expired in March 2021. As an initial matter, the '522 Patent, which, *inter alia*, relates to certain uses of specified formulations, including the AREDS 2 formulation, is unexpired. And while the '297 Patent expired in March 2021, that does not render the reference to the product as "patented" clearly false. In fact, the Patent Act explicitly permits products covered by an expired patent to be labeled as "patented." *See* 35 U.S.C. § 292(c) ("The marking of a product . . . with matter relating to a patent that covered that product but has expired is not a violation of this section.").

As to Pharmavite's allegations that B&L makes disease claims proscribed by the Federal Food, Drug, and Cosmetics Act ("FDCA") (*see* Compl. ¶¶ 42–46): Pharmavite does not allege that those statements were "false" as required to meet the requirements of *Harcourt*, but rather that the statements violate the FDCA. The FDCA does not provide for a private right of action, and Pharmavite's reference to it is a red herring. *See, e.g.*, *Perez v. Nidek Co.*, 711 F.3d 1109, 1119–20 (9th Cir. 2013) (dismissing fraud claim "because it amounted to an attempt to privately enforce the FDCA").

Pharmavite makes no effort to recite, much less plead facts supporting, at least three other elements required to overcome the *Harcourt* presumption:

---

[12] Typically, antitrust allegations hinged on marketing claims involve *disparagement* of a rival, not claims about the qualities of one's *own* product. The lack of such alleged disparagement here further underlines the implausibility of an antitrust case involving potential exclusion of competitors.

- "Clearly likely to induce reasonable reliance" – Neither "rely" nor "reliance" (much less "reasonable reliance") is in the Complaint, and "induce" is only used once in a completely different context. Compl. ¶ 108 (discussing whether Pharmavite induced anyone to infringe the '522 Patent").

- "Made to buyers without knowledge of the subject matter" – "Knowledge" is used only once in the Complaint in reference to B&L knowing that the '297 Patent has expired, *id.* ¶ 55; and "subject matter" is only used to discuss jurisdiction and the patents, *id.* ¶¶ 7, 100–01, 112. The Complaint is completely silent as to whether consumers with AMD or eye disease have knowledge regarding the products they consider purchasing in relation to their AMD or eye disease.

- "Not readily susceptible of neutralization or other offset by rivals" – The Complaint is completely silent on this point; it neither uses the words "susceptible," "neutralization," "offset," or "rivals" nor articulates the concept of this element at all.[13]

2. This Court should also dismiss Pharmavite's Claims I and II for failure to allege monopoly power, or its dangerous probability, with respect to an "eye health dietary supplement" market.

Pharmavite's monopolization and attempted monopolization claims also fail because the facts alleged do not support monopolization or a dangerous probability of achieving a monopoly *in the antitrust market Pharmavite claims*. The only market alleged in the Complaint is an "eye health dietary supplement market." Compl. ¶¶ 1, 8, 24, 32, 36, 49, 52–53, 57, 60, 62, 69, 79–81, 85. Pharmavite alleges that B&L's market share in that market has increased from 68% in 2016 to 79% in 2019 and that currently B&L has an 80% share. Compl. ¶ 24.

---

[13] This failure alone is grounds to dismiss Pharmavite's marketing-related claims. *See, e.g.*, *Genus Lifesciences Inc.*, 378 F. Supp. 3d at 842 ("Genus has failed to allege why an advertising campaign touting Goprelto as the only FDA approved cocaine hydrochloride product would not be successful, or why any efforts to tell its customers that C-Topical is unapproved or that its route of administration is misleading would fail.").

Pharmavite fails to explain how litigation concerning a single patent covering methods of using certain limited formulations could possibly lead to "monopolizing" the entire alleged "eye health dietary supplement market."  It nowhere alleges that the whole of the "eye health dietary supplement market" is covered by B&L's patents or even what share of the alleged market B&L's PreserVision AREDS 2 product occupies (as opposed to B&L's other eye supplement brand Ocuvite®[14]), or what impact (if any) ending B&L's patent infringement suit and/or its marketing of PreserVision AREDS 2 as "patented" would have on the defined market.

In other words, the Complaint is bereft of facts tying the alleged wrongdoing of filing a patent suit and marketing PreserVision AREDS 2 as "patented" to a monopoly of the alleged market or a dangerous probability of B&L achieving a monopoly in the alleged market.  Indeed, publicly available information suggests that there are dozens of companies offering non-AREDS 2 eye health dietary supplement products[15] in the alleged market.  Moreover, B&L sells Ocuvite®, in multiple formulations in the alleged market, none of which have the AREDS 2 formula nor any of the allegedly problematic marketing statements described in the Complaint.  The Complaint does not allege otherwise.  (*See* Compl. ¶¶ 38-48 (focusing on PreserVision and AMD).)[16]

---

[14]  *See* BAUSH + LOMB OCUVITE®, https://www.ocuvite.com/ (last visited Mar. 29, 2022).

[15]  Here is a small sample of companies offering eye health dietary supplements (in addition to Pharmavite and B&L) based on a Google search for the term "eye health vitamins": MD Nutrition, Bulletproof, Nourished, Live Conscious, Pure Synergy, Focus Select, Eye Conscious, Life Extension, GNC, Swanson, MitoQ, 1st Phorm, Member's Mark, Equate, Alcon, Explicit, Dr Vitamin Solutions, Naturelo, NutriVein, Carlyle, Natural Nutra, Dr. Brian, Natures Craft, etc. *See eye health vitamins*, GOOGLE, https://www.google.com/search?q=eye+health+vitamins&rlz=1C1GCEA_enUS990US990&source=univ&tbm=shop&tbo=u&sa=X&ved=2ahUKEwj9jamN9LL2AhVSknIEHSjvAmcQ1TV6BQgBEPEB&biw=1280&bih=609&dpr=1.5 (last visited Mar. 29, 2022).

[16]  *See* BAUSH + LOMB OCUVITE FAMILY OF PRODUCTS, https://www.ocuvite.com/family-of-products/ (last visited Mar. 30, 2022).

Pharmavite makes no effort to subtract those products from the B&L's alleged market share, even though those products are completely unrelated to any alleged wrongdoing in this case.

Pharmavite's failure to "connect the dots" between its alleged restraint (B&L's patent infringement suit and B&L's marketing of its PreserVision AREDS 2 product as "patented") and harm to its alleged market ("eye health dietary supplement market") is grounds for dismissal.  *See, e.g.*, *Med Vets Inc. v. VIP Petcare Holdings, Inc.*, No. 18-CV-02054-MMC, 2019 WL 1767335, at *6 (N.D. Cal. Apr. 22, 2019), *aff'd*, 811 F. App'x 422 (9th Cir. 2020) (dismissing suit based on disconnect between alleged market and allegations related to "much broader[] array of products"); *Eastman v. Quest Diagnostics Inc.*, No. 15-CV-00415-WHO, 2016 WL 1640465, at *6 (N.D. Cal. Apr. 26, 2016), *aff'd*, 724 F. App'x 556 (9th Cir. 2018) (same).

**B.     Pharmavite's Claim III (Conspiracy to Monopolize) should be dismissed for failure to plausibly allege a conspiracy between the defendants or an overt act in furtherance of the same.**

Pharmavite's third and final antitrust Claim for Relief is based on "conspiracy to monopolize."  Specifically, Pharmavite asserts that there is a conspiracy between B&L and PF Consumer Healthcare 1 LLC ("PF Consumer"), ostensibly because both companies sued Pharmavite for patent infringement.[17]  However, Pharmavite's allegations fall well short of the requirements for pleading a plausible antitrust conspiracy.

"To prove a conspiracy to monopolize in violation of § 2, [a plaintiff] must show four elements: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury."  *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158

---

[17] Had PF Consumer not joined the lawsuit, Pharmavite might have been able to complain that there was a failure to join all necessary parties.

(9th Cir. 2003) (citing *United States v. Yellow Cab Co.*, 332 U.S. 218, 224–25 (1947)). For Pharmavite to meet its burden to plausibly make out such a claim, it must do more than simply point out that it was sued by both entities with rights in the '522 patent. "[W]hen allegations of parallel conduct are set out in order to make a [conspiracy claim], they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Prosterman v. Am. Airlines, Inc.*, 747 F. App'x 458, 461 (9th Cir. 2018) (quoting *Twombly*, 550 U.S. at 557).

The Ninth Circuit has described the allegations required for this as "plus factors" or "'some further factual enhancement', a 'further circumstance pointing toward a meeting of the minds' of the alleged conspirators." *In re Musical Instruments*, 798 F.3d 1186, 1193 (9th Cir. 2015) (quoting *Twombly*, 550 U.S. at 557, 560). "Plus factors" are often "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Id.* at 1194. For example, in *In re Musical Instruments*, the Ninth Circuit rejected proposed "plus factors" as insufficient to survive a motion to dismiss because the stated factors were simply activities one would expect in an interdependent market, where "firms may engage in consciously parallel conduct through observation of their competitors' decisions even absent an agreement." *Id.* at 1194–97.

In this case, Pharmavite alleges *no "plus factors" whatsoever*. It provides no allegation or explanation why PF Consumer would have any interest in making B&L a monopoly, nor any explanation for why PF Consumer's decision to join in the suit against Pharmavite was inconsistent with unilateral conduct.

Instead, Pharmavite's conspiracy allegations amount to a single formulaic insert in the Claims for Relief section: "On information and belief, an agreement and/or mutual understanding was formed and exists between Defendants . . . by which PF Consumer Healthcare 1 assists Bausch & Lomb to obtain and maintain monopoly

power in the eye health dietary supplement market."  Compl. ¶ 80.  Courts in this circuit regularly dismiss antitrust conspiracy claims when they fail to plead facts supporting the contention, including in situations where the plaintiffs pled far more than Pharmavite does here.  *See, e.g.*, *Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 497 (9th Cir. 2020); *see also In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1065–66 (N.D. Cal. 2019) (dismissing where plaintiffs "simply state in the Claims for Relief sections of their complaints that Defendants" had conspired to fix prices).

### C.  The Court should dismiss all of Pharmavite's Sherman Act § 2 claims (Claims I, II, and III) because the alleged facts could not lead to antitrust injury.

Each of Pharmavite's antitrust causes of action—monopolization (Count 1), attempted monopolization (Count 2), and conspiracy to monopolize (Count 3)—demand plausible allegations of "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *see also Fed. Trade Comm'n v. Qualcomm Inc.,* 969 F.3d 974, 990 (9th Cir. 2020) (as to monopolization claims); *McQuillan*, 506 U.S. at 456 (attempted monopolization claims); and *Paladin Assocs., Inc.*, 328 F.3d at 1158 (conspiracy to monopolize claims).

Because antitrust injury here must flow from exclusionary conduct, the absence of exclusionary conduct means that any claimed injury cannot be "antitrust injury."  That said, just because exclusionary conduct is alleged does not mean that the plaintiff has properly asserted antitrust injury.  In other words, even if this Court determines that Pharmavite has sufficiently pled exclusionary conduct (it has not), that does not mean Pharmavite has also met its burden to properly plead antitrust injury.  Here,

Pharmavite's failure to properly plead antitrust injury provides a separate, independent basis for dismissing all of Pharmavite's Section 2 claims.

To adequately plead antitrust injury when a plaintiff asserts that a litigation against it is a sham, the plaintiff must allege that the *filing* of the lawsuit—not its potential *outcome*—causes harm to a competitive market, "as opposed to merely harm to itself." *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11–2243 CW, 2012 WL 3877783, at *10–11 (N.D. Cal. Sept. 6, 2012). Critically, the plaintiff must show how "the challenged lawsuit is causally linked to an antitrust injury." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 149 (3d Cir. 2017) (citing *Brunswick Corp.*, 429 U.S. at 489, (1977)).

Here, Pharmavite has not alleged injury, much less antitrust injury, as a result of B&L bringing the patent infringement suit. Pharmavite has not alleged that it or any other eye health dietary supplement provider is suffering or will suffer any anticompetitive effect as a result of the existence of the lawsuit. It has not alleged any lost sales, any lost customers, or any lost profits. Pharmavite also nowhere alleges that prices have been affected or that the quality of any of its products has been reduced *by virtue of having to defend the Delaware Matter.*

Even if Pharmavite had alleged such injuries, its Complaint *still* would not establish an *antitrust* injury because it does not attempt to meet the additional step of showing harm *to competition*, as distinguished from harm *to itself.* "Here, the Complaint does not allege any injury to competition or consumer welfare. Rather, [Pharmavite] alleges only harm to itself. Harm to a competitor, however, without harm either to competition or to consumer welfare, is not sufficient to establish antitrust injury." *POURfect Prods.*, 2010 WL 1769413, at *5; *see also TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 834 (C.D. Cal. 2010) ("At best, Cantor's report is evidence of injury to TYR, Speedo's competitor, but does not show injury to competition, which is what the law requires."); *Pool Water Prods. v. Olin*

1  *Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) (finding no antitrust injury because "[a]

2  decrease in one competitor's market share . . . affects competitors, not competition")

3  (quoting *Atl. Richfield Co. v. USA Petroleum Co.*,495 U.S. 328, 338 (1990)) (citing

4  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986) and *Leegin Creative*

5  *Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 906 (2007) (for the proposition that

6  "[t]he purpose of the antitrust laws . . . is 'the protection of competition, not

7  competitors'")).

8       The lack of any plausible, alleged harm to *competition* also precludes finding

9  antitrust injury with respect to B&L's marketing.  As the Ninth Circuit explained in

10 *Harcourt*, in such a situation, courts in the Ninth Circuit "insist on a 'preliminary

11 showing of significant and more-than-temporary harmful effects on *competition* (and

12 not merely upon a competitor or customer) . . . .'" *Harcourt*, 108 F.3d at 1151 (quoting

13 3 P. Areeda & D. Turner, Antitrust Law ¶ 737b at 278 (1978) (discussing the effects

14 (injury) that must be shown to succeed on a Section 2 claim based on marketing

15 claims)) (emphasis in original);  *see also Kinderstart.com LLC v. Google, Inc.*, No. C

16 06-2057 JF (RS), 2007 WL 831806, at *10 (N.D. Cal. Mar. 16, 2007); *POURfect*

17 *Prods.*, 2010 WL 1769413, at *4; *TYR Sport, Inc.*, 709 F. Supp. 2d at 836 (each case

18 rejecting *Harcourt*-type claims, in part, due to a failure to allege or prove "harm to

19 competition" as opposed to harm to a competitor.).

20      In its Complaint, Pharmavite merely recites that "[o]n information and belief"

21 B&L "has suppressed, and will suppress, competition and produced anticompetitive

22 effects in the relevant markets, including causing Pharmavite antitrust injury and

23 damages in the form of lost sales and lost market share proximately caused by

24 Defendants' unlawful and anticompetitive practices."  Compl. ¶ 87.  Such formulaic

25 recitations are routinely rejected by this and other courts.  *See, e.g.*, *Hip Hop Beverage*

26 *Corp. v. Monster Energy Co.*, No. 2:16-CV-1421-SVW-FFM, 2016 WL 7324091, at *4

27 (W.D. Cal. Oct. 26, 2016), *aff'd*, 733 F. App'x 380 (9th Cir. 2018) ("Plaintiff makes

28

conclusory allegations of injury to competition, but does not plead specific facts of a cognizable antitrust injury. . . . Plaintiff does not allege the price of products in the market, [and] . . . Plaintiff does not plead the supply or quality of products in the market, let alone a decrease in them."); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, No. 17-CV-05005-LB, 2017 WL 6059299, at *7 (N.D. Cal. Dec. 7, 2017) ("Naked assertions made upon information and belief and devoid of further factual enhancement are insufficient to state a claim.") (citations, quotation marks, and alterations omitted); *City of Oakland v. Oakland Raiders*, No. 18-CV-07444-JCS, 2019 WL 3344624, at *10–11 (N.D. Cal. July 25, 2019) (dismissing suit based on the plaintiff's failure to include allegations describing the relationship between the alleged competitive restraint and the plaintiff's injuries). They should be rejected here as well.

## D.   B&L's patent lawsuit against Pharmavite is immune from antitrust challenge under *Noerr-Pennington*.

The right to bring disputes to a federal court and to ask that court to enter judgment in one's favor is among the rights protected by the Petitions Clause of the First Amendment. U.S. Const. Amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Accordingly, courts have erected an extremely high bar for plaintiffs to seek damages based on a defendant having exercised its right to petition the courts. This is referred to generally as the *Noerr-Pennington* doctrine, named after two Supreme Court cases holding that the First Amendment's Petition Clause immunizes acts of petitioning the government from antitrust liability. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS

petitioning conduct." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1112 (C.D. Cal. 2015) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)).  Overcoming *Noerr-Pennington* requires a plaintiff to plead facts that would establish that the relevant petitioning activity is or was a "sham."  "To establish that a petition to the court is a sham, the party seeking to impose liability must establish both that the legal claim is objectively baseless and that the suit was brought for an anticompetitive purpose." *Sosa*, 437 F.3d at 938.  Relatively few plaintiffs are able to meet this obligation, and Pharmavite's complaint certainly does not.

As a preliminary matter, this Court need not delve into *Noerr-Pennington* unless it is convinced that Pharmavite has adequately alleged a Section 2 case—including well-pleaded allegations of anticompetitive exclusion in the plaintiff's antitrust market, an overt act in furtherance of the alleged conspiracy, and antitrust injury.

Nevertheless, to address the sham allegations head-on: while the Complaint avoids discussing B&L's record of success, courts in this Circuit regularly take judicial notice of publicly available results in litigation involving sham allegations.[18]  B&L's successful track record prosecuting this same patent family, discussed *supra*, Part II.A., renders implausible the idea that B&L's infringement suit against Pharmavite is objectively baseless or brought with an anticompetitive purpose (as contrasted with the intent to continue successfully enforcing its patent portfolio).  *See, e.g., Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (finding that a settlement of similar claims against a different entity meant the settled suit and the threatened suit based on similar claims were "not objectively baseless" and were protected by *Noerr-Pennington*); *Sandisk Corp. v. STMicroelectronics, Inc.*, No. C 04-

---

[18] *See supra* note 5.

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

4379 JF (RS), 2008 WL 4615605, at *10 (N.D. Cal. Oct. 17, 2008) ("Past litigation success bars a sham litigation claim.").[19]

### E.    The Court should dismiss Pharmavite's patent claims (Claims IV, V, and VI) based on the first to file rule.

The Court should dismiss Pharmavite's patent claims under the first to file rule because B&L previously filed a complaint involving the same parties and closely related patent infringement questions in another district.  When two actions involving the same parties and closely related patent infringement questions are filed in separate districts, "the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed."  14D C. Wright et al., Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011); *see also EMC Corp. v. Bright Response*, LLC, No. C–12–2841 EMC, 2012 WL 4097707, at *1 (N.D. Cal. Sept. 17, 2012).  The first to file rule "serve[s] the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).

Courts consider three factors in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the

---

[19] *See also In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp.3d 811, 830 (N.D. Ill. 2020) ("AbbVie's rate of success with its patent applications—more than half (53.4%) of AbbVie's patent applications resulted in patents . . . compels the conclusion, as a matter of law, that more than half of AbbVie's patent applications were not objectively baseless. . . . [A] batting average of .534 would be too high to plausibly allege sham petitioning as a matter of law."); *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015) ("In deciding whether there was such a policy of filing petitions with or without regard to merit, a court should perform a holistic review that may include looking at the defendant's filing success—i.e., win-loss percentage—as circumstantial evidence of the defendant's subjective motivations."); *Toyo Tire & Rubber Co.*, 2015 WL 4545187, at *3  (holding that sham exception to *Noerr-Pennington* did not apply where defendant settled two of three federal cases alleged to be a sham); *Abbott Lab. v. Mylan Pharm., Inc.*, No. 05 C 6561, 2007 WL 625496, at *4 (N.D. Ill. Feb. 23, 2007) (holding that a claim for sham patent litigation was barred by "prior litigation upholding the same patents").

similarity of the issues.  *Alltrade, Inc.*, 946 F.2d at 625–26; *Golo, LLC v. Goli Nutrition Inc.*, No. 2:21-cv-02348-VAP (MAAx), 2021 WL 3360134, at *3 (C.D. Cal. July 30, 2021).  Here, each factor weighs in favor of applying the first to file rule:  (1) B&L filed its patent infringement Complaint in the United States District Court for the District of Delaware five months before Pharmavite filed the present suit (*see* Compl. ¶ 9.); (2) Pharmavite, PF Consumer, and B&L are parties in both suits (*see* Am. Compl. 1, Delaware Matter); and (3) both pending lawsuits concern the same patent—the '522 Patent.

The first to file rule is particularly applicable here because allowing a declaratory judgment action against the '522 patent in this Court would mean that B&L's own patent infringement claims—already live in Delaware—would become compulsory counterclaims in this Court.  *Hynix Semiconductor Inc. v. Rambus Inc.*, Nos. CV-00-20905 RMW, C-05-02298 RMW, C-05-00334 RMW, C-06-00244 RMW, 2007 WL 4062845, *4 (N.D. Cal. Nov. 15, 2007) ("[A] claim for a declaratory judgment that a product does not infringe makes a counterclaim that the product infringes the patent compulsory.").  This is precisely the fact pattern that the first to file rule is designed to avoid, and the Court should therefore apply the first to file rule and dismiss Pharmavite's declaratory judgment claims.

## F.    In the alternative, the Court should transfer or stay this action pending resolution of the patent litigation in Delaware.

For the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.  28 U.S.C. § 1404(a); *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).  If the Court does not dismiss Pharmavite's Complaint, it should transfer this action to the District of Delaware under § 1404.

On balance, the traditional 1404 factors weigh in favor of transfer. These factors include, among others, "(i) the location where the relevant agreements were negotiated

and executed, (ii) the state that is most familiar with the governing law, (iii) the plaintiff's choice of forum, (iv) the respective parties' contacts with the forum and the contacts relating to the plaintiff's cause of action in the chosen forum, (v) the differences in the costs of litigation in the two forums, (vi) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (vii) the ease of access to sources of proof, and (viii) judicial economy." *See Secondary Life Three LLC v. TransAmerica Life Ins. Co.*, No. 20-CV-09034-AB (KSX), 2021 WL 2191219, at *2 (C.D. Cal. Feb. 24, 2021) (Birotte, J.).  Here, plaintiffs are already present in the District of Delaware, having just filed dispositive motions; the first plaintiff's choice of forum (B&L's choice of forum) was Delaware; the District of Delaware hears more patent disputes than this Court;[20] there is no meaningful difference in cost between litigating in one federal district court versus another;[21] and there is no difference between the two courts in the availability of compulsory process or in availability of evidence.  Moreover, trying the same facts in two forums is a waste of judicial resources that creates a clear risk of inconsistent judgments.

If the Court neither dismisses nor transfers this action, the Court should stay this case pending resolution of the patent infringement suit in the District of Delaware. Such a stay would avoid the potential for inconsistent judgments and would also preserve judicial resources, as the resolution of the patent infringement suit could be outcome-determinative to Pharmavite's antitrust and other claims for relief.  *See Complete Genomics, Inc. v. Illumina, Inc.*, No. 21-CV-00217-WHO, 2021 WL 1197096, at *3 (N.D. Cal. Mar. 30, 2021) ("[T]he power to stay proceedings is

---

[20] *See 2020 Patent Litigation: Year in Review*, JD Supra (Mar. 25, 2021), https://www.jdsupra.com/legalnews/2020-patent-litigation-year-in-review-5104923/ (showing, from 2018–2021, 2,602 patent cases filed in the District of Delaware versus 665 in the Central District of California).

[21] Ironically, the filing of *this* lawsuit has led to increased costs and duplication of efforts.

incidental to the power inherent in every court to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants.") (alteration in original) (citations omitted).  Such a stay would be routine in the context of related patent infringement and sham litigation claims.  *See, e.g.*, *ASM Am., Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) ("It is a common practice in federal court to stay antitrust counterclaims until after the trial of [related patent claims].").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, B&L respectfully requests that the Court dismiss Plaintiffs' antitrust claims (Counts I through III) for failure to state a claim under Rule 12(b)(6) and dismiss its patent-related claims (Counts IV through VI) based on the first-to-file rule.  Alternatively, B&L requests that this Court transfer this action to the District of Delaware under 28 U.S.C. § 1404 or stay this action pending resolution of B&L's patent infringement claims currently pending in the same.

Dated:  March 30, 2022

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:    */s/ Hyongsoon Kim*
      Hyongsoon Kim
      Corey W. Roush
      Steven D. Maslowski
      Andrew Holtman
      J. Matthew Schmitten

      *Attorneys for Defendant*
      *Bausch & Lomb Incorporated*

DEFENDANT BAUSCH & LOMB INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS